## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                               **CASE NO. 10-18891-JKO**

**SNP BOAT SERVICE SA**                 **CHAPTER 15**
**a/k/a SERVICE NAVIGATION**
**DE PLAISANCE BOAT SERVICE SA,**

        Debtor in Foreign Proceedings.
_____/

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND FOR PROVISIONAL RELIEF PURSUANT TO SECTIONS 1515 AND 1519(a) OF THE BANKRUPTCY CODE, SCHEDULING HEARING, APPROVING NOTICE AND INCORPORATED MEMORANDUM OF LAW

Pierre-Louis Ezavin, Foreign Representative (the "Foreign Representative") of SNP Boat Service SA a/k/a Service Navigation De Plaisance Boat Service SA ("SNP Boat" or the "Foreign Debtor"), by and through his undersigned counsel, hereby moves this Court for entry of an order granting (i) recognition of the French Proceeding as a "foreign main proceeding," pursuant to section 1515 title 11 of the United States Code (the "Bankruptcy Code"); and (ii) provisional relief pursuant to section 1519(a) of the Bankruptcy Code, and to the extent applicable, Rule 7065 of the Federal Rules of Bankruptcy Procedure and Rule 65 of the Federal Rules of Civil Procedure; (iii) Scheduling Recognition Hearing; and (iv) Approving Notice, and respectfully represents, as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Recognition of foreign proceedings and other matters under chapter 15

of the Bankruptcy Code are expressly designated as core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this Court pursuant to 28 U.S.C. § 1410(1).

2.    The Debtor's principal assets in the United States are located in Broward County, Florida. The Debtor does not have a "branch or agency (as defined in section 1(b) of the International Banking Act of 1978 in the United States.)" 11 U.S.C. § 109(b)(3)(B). Accordingly, the Debtor is eligible for chapter 15 relief. *See* 11 U.S.C. §§ 1501(b) and (c).

## Background

### A.    The Foreign Debtor

3.    SNP Boat is a foreign business organization, formed under the laws of France.

4.    The Foreign Debtor's business is to create and operate all agencies to represent and sell boats, perform all after sale services and all pleasure boating services, to purchase, rent, manage and sell harbor docking space (finger piers, berths).

5.    The Foreign Debtor's registered office is located at Boulevard de la Croisette, Port Pierre Canto, Lots AX et AW, 06400, Cannes, France.

6.    The Foreign Debtor is part of the Rodriguez Group of which Rodriguez Group SA, a holding company, owns 99.71% of the capital stock of the Foreign Debtor.

### B.    Overview of the Foreign Debtor's *Sauvegarde* Proceedings Before the Commercial Court of Cannes

7.    On April 7, 2009, the Commercial Court of Cannes, France (Tribunal de commerce de Cannes) (hereinafter, the "Commercial Court") entered a *Judgment* instituting insolvency/safeguard proceedings as to the Foreign Debtor. A certified translated copy of the *Judgment* instituting what is known under French law as

2

*Sauvegarde* proceedings is attached hereto as <u>Exhibit "1"</u>.  A copy of the *Judgment* is attached hereto as <u>Exhibit "1-A"</u>.

8.      The French *Sauvegarde* proceeding's goals are to facilitate the reorganization of the debtor in order to pursue its commercial activity, to maintain its employments and to repay its debts.  (Article L. 620-1 of the French Commercial Code). *See also* <u>Exhibit "1"</u> attached hereto.

9.      The French *Sauvegarde* procedure's timeframe is as follows:

a.      <u>The Observation Period</u>:  During this period, the debtor and its representatives attempt to find solutions to improve the debtor's financial situation, to maintain its employment and to reimburse its creditors;

b.      <u>The *"plan de sauvegarde"* Period</u>:  At the end of the observation period, a *"plan de sauvegarde"* is adopted by the Commercial Court if the reorganization of the debtor is possible.  The plan provides, in particular, for a repayment schedule, whereby the debtor must execute annual payment in cash ("dividends"), to admitted creditors, during a determined period of time;

c.      <u>The Execution Period</u>:  The execution of the *"plan de sauvegarde"* takes place over several years.  The rights and obligations of each party under the plan are mandatory.  (Article L.626-10) and the plan's terms and conditions are enforceable to anyone (Article L. 626-11).  A *"commissaire á l'execution du plan"* is designated by the Commercial Court adopting the plan de sauvegarde.  He is in charge of supervising the good execution of the plan de sauvegarde (Article L. 626-25).

10.     Under a *Sauvegarde* proceeding, and pursuant to Articles L. 622-1 and L. 622-3 of the French Commercial Code, the debtor's management and administration remain under the control of its chief executive officer.  Almost all acts and measures related to the debtor's common course of business are taken by the debtor itself and are considered as valid and enforceable against third parties with good faith.  *See also* <u>Exhibit "1"</u> attached hereto.

11.    The Commercial Court, in the judgment opening the *Sauvegarde* proceeding for the debtor, designates two "*mandataires de justice*", i.e., the "*mandataire judiciaire*" and the "*administrateur judiciaire*" (Article L. 621-4 of the French Commercial Code).

12.    The Commercial Court is not obligated to designate an "*administrateur judiciaire*" if the company's turnover is less than €3,000,000 before tax and if it has less than 20 employees. (Article R.621-11 of the French Commercial Code). *See also* Exhibit "1" attached hereto.

13.    Pursuant to Article L. 622-1 of the French Commercial Code, the "*administrateur*" has the mission to monitor the debtor's management and administration, or to assist the debtor in complying with its legal and contractual obligations. Pursuant to Article L. 622-20 of the French Commercial Code, the "*mandataire judiciaire*" is the sole representative entitled to act on behalf of the creditors' community, in their common interest. *See* Exhibit "1" attached hereto.

14.    Maître Didier Cardon was appointed as "*Mandataire Judiciaire*" of the procedure, and Pierre-Louis Ezavin and Maître Bauland were appointed as "*co-administrateurs*" of the *Sauvegarde* procedure with the mission to assist the Foreign Debtor in its management. *See* Exhibit "1" attached hereto.

15.    In the current *Sauvegarde* proceeding by the Foreign Debtor, the Observation Period ends on or about April 7, 2010. At this time, it is likely that the "*plan de sauvegarde*" will be adopted and will last over ten (10) years. *See* Exhibit "1" attached hereto.

16.     Article L.622-7. I of the French Commercial Code provides for the prohibition of payments of prior debts as from the judgment opening of the *Sauvegarde* proceeding. *See* <u>Exhibit "1"</u> attached hereto.

17.     Article L. 622-21.I of the French Commercial Code provides for the suspension of any legal proceeding instituted by creditors (whose debts are not mentioned by Article L. 622-17.I, namely debts legally created after the judgment opening the *Sauvegarde* proceeding for the needs of the procedure or the observation period, or in exchange for a service performed for the debtor during that period) in order to (i) condemn the debtor to pay an amount in cash, or to (ii) end a contract for non-payment of an amount in cash. *See* <u>Exhibit "1"</u> attached hereto.

18.     Article L. 622-21. II provides for the prohibition of writs of execution on the debtor's assets as from the judgment opening the *Sauvegarde* proceeding. *See* <u>Exhibit "1"</u> attached hereto.

19.     If the "*plan de sauvegarde*" is adopted on April 7, 2010, the repayment of admitted creditors will be monitored by the repayment schedule providing for an annual payment of dividends.  Pursuant to Article L.626-21 of the French Commercial Code, debts contested by the debtor are reimbursed in accordance with the repayment schedule only on their final admission to the debtor's liabilities.  As an exception, the same article provides for the possibility for the Court in charge of a contested debt to authorize creditors to receive provisional dividends before the definite admission of their debt. *See* <u>Exhibit "1"</u> attached hereto.

20.     The terms and conditions of the "*plan de sauvegarde*" monitor the repayment of creditors and they are mandatory (Articles L. 626-10 and L. 626-11).

21.     Under the applicable French law, the Foreign Debtor's prior creditorscannot execute on the assets of the Foreign Debtor, until such time as the *"plan de sauvegarde"* is completed.  *See* Exhibit "1" attached hereto.

22.     There are approximately 250 creditors of SNP Boat.  The assets and liabilities of SNP Boat each exceed $100 Million.

**C.     The Broward County State Court Action**

23.     On February 17, 2010, Hotel Le St. James, Inc. ("St. James") initiated a proceeding in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida ("State Court"), Case No. 10-7794 (18) (the "State Court Action") to domesticate a foreign judgment rendered in Canada and enforce same judgment against the Foreign Debtor.  A copy of St. James's *Notice of Filing Foreign Judgment* is attached as Exhibit "A" to the Foreign Debtor's *Verified Emergency Motion to Vacate Recognition and Domestication of Foreign Judgment and/or in the Alternative, Motion to Stay Execution and Memorandum of Law in Support Thereof (the "Motion to Vacate")* filed in the State Court Action, a copy of which is attached hereto as Exhibit "2".

24.     St. James alleges in the State Court Action that it filed a *Notice of Recording Foreign Judgment* with the Broward County Commissioners' office, recording same on December 11, 2009, Instrument #109023328.  *Motion to Vacate*, Exhibit "A".

25.     St. James further alleges that it served a *Notice of Recording* said Foreign Judgment on the Foreign Debtor, and another notice upon its registered agent, Alix Apollon, notifying them of the recording of a Foreign Judgment naming them as a debtor. *Motion to Vacate*, Exhibit "A".

26.     As reflected in the *Notice of Recording Foreign Judgment*, the notice was directed to "SNP BOAT SERVICE, INC." ALIX J. APOLLON, REGISTERED AGENT, 16340 S.W. 89th PLACE, MIAMI BEACH, FL 33157.

27.     The Affidavit of Michael Karcher, Esq., in support of the *Notice of Recording Foreign Judgment* also states in relevant part:

> \*\*\*
>
> 4.  The Hotel Le St. James, Inc., the foreign Judgment Creditor, has filed their judgment and Affidavits setting forth the procedures in Canada. The undersigned is giving notice **that Foreign Judgment Debtor is SNP Boat Services, Inc.**
>
> \*\*\*

*See* Composite Exhibit "B" to St. James' *Notice of Recording Foreign Judgment*. (emphasis added).

28.     Additionally, as reflected in the *Notice of Recording Foreign Judgment*, the notice of recording was also directed to "SNP BOAT SERVICE, INC." 1651 COLLINS AVENUE, MIAMI BEACH, FL 33139.

29.     The Notice of Recording was sent via U.S. Mail to "the following debtors":

SNP BOAT SERVICE, INC.
ALIX J. APOLLON, REGISTERED AGENT
SNP BOAT SERVICE, INC.

*See* Exhibit "C" to St. James' *Notice of Recording Foreign Judgment*.

30.     As reflected above, the judgment attached to St. James' *Notice of Recording Foreign Judgment* is against the Foreign Debtor and not against SNP BOAT SERVICE, INC., a separate legal entity, who was not a party to the Canadian action. *See* Exhibit "A," to St. James' *Notice of Recording Foreign Judgment*.

31.     SNP Boat Service, Inc. is a Florida Corporation, organized under the laws of the State of Florida, and having a business address of 1651 Collins Avenue, Miami Beach, FL 33139, whereas SNP Boat (the Foreign Debtor) is a French company incorporated in Cannes, France, with an address of Boulevard de la Croisette, Port Pierre Canto, 06400, Cannes, France.

32.     There is no indication anywhere in the records filed by St. James in the State Court Action that the Foreign Debtor was served with a copy of the Notice of Recording Foreign Judgment.

33.     Nevertheless, St. James obtained a *Writ of Execution* on or about February 19, 2010, commanding the Broward County Sheriff to levy on the Goods and Chattels of SNP BOAT SERVICE, S.A., located at 1651 Collins Avenue, Miami Beach Florida.  A copy of the *Writ of Execution* is attached to the *Motion to Vacate* as Exhibit "B."

34.     The *Writ of Execution* names five motor yachts, those being:  (i) the M/Y SIXTY FIVE; (ii) the M/Y FOURSOME; (iii) the M/Y HIP; (iv) the M/Y VISA, and (v) the M/Y SEXY.

35.     Thereafter, the Vessels M/Y SIXTY FIVE and M/Y FOURSOME were taken into custody.

36.     The Foreign Debtor is not the owner of the M/Y FOURSOME.

37.     A copy of the *Notice of Sheriff's Levy* for the M/Y SIXTY FIVE and Return of Service is attached to the *Motion to Vacate* as composite Exhibit "C".

38.     The M/Y SIXTY FIVE had been scheduled for sale on April 13, 2010.  A copy of the *Notice of Sheriff's Sale* is attached to the *Motion to Vacate* as Exhibit "D".

39.     However on April 1, 2010, the State Court held a hearing in the State Court Action and ruled that it would be entering an order staying the sale of the M/Y SIXTY FIVE but also ordered the parties to mediation.

40.     The M/Y SIXTY FIVE continues to be located at National Maritime Services, Inc., 1915 S.W. 21 Avenue, Fort Lauderdale, FL.

41.     Prior to the M/Y SIXTY FIVE being taken into custody, the Foreign Debtor, by and through its authorized agents, was working on renovations to the vessel in order to be able to sell the vessel and utilize the proceeds from sale to be administered in the *Sauvegarde* proceeding and towards the *plan de sauvegarde* in order to pay its creditors pursuant to the plan.

**D.     The Bankruptcy Proceeding**

42.     On March 30, 2010, the Commercial Court of Cannes, in order to authorize the filing of a chapter 15 petition in the United States at the request of Mr. Ezavin as the Foreign Representative, issued a *Certificate* certifying that SNP Boat is currently under a *Sauvegarde* Proceeding and that Mr. Ezavin was designated as "*Administrateur Judiciaire*" (Administrator) of SNP Boat with the mission to assist such company in its management.  A translated copy of the *Certificate* is attached hereto as Exhibit "3".  A copy of the *Certificate* is attached hereto as Exhibit "3-A".

43.     On April 6, 2010 (the "Petition Date"), the Foreign Representative filed a chapter 15 petition on behalf of the Foreign Debtor pursuant to sections 1504 and 1515 of the Bankruptcy Code, commencing this chapter 15 case in aid of the *Sauvegarde* Proceeding, seeking recognition of the *Sauvegarde* Proceeding as a "foreign main

proceeding" as defined in section 1502(4) of the Bankruptcy Code, and seeking other necessary relief in aid of the *Sauvegarde* Proceeding.

44.     Attached hereto as <u>Exhibit "4"</u> is the *Statement of Foreign Representative as Required by 11 U.S.C. § 1515 (the "Foreign Representative Statement")*.

### Requested Relief

45.     By this *Petition*, the Foreign Representative sees entry of an order, substantially in the form attached hereto as <u>Exhibit "5"</u> (the "Proposed Order"), granting provisional relief pursuant to section 1519 (a) of the Bankruptcy Code (i) applying section 362 of the Bankruptcy Code on a provisional basis and prohibiting all persons and entities from (a) continuing any action or commencing any additional action, against or involving the Foreign Debtor, or its assets or the proceeds thereof; (b) enforcing any judicial, quasi-judicial, administrative or regulatory judgment, assessment or order or arbitration award against the Foreign Debtor or its assets; (c) commencing or continuing any action to create, perfect or enforce any lien, setoff or other claim against the Foreign Debtor or against any of its property; or (d) managing or exercising control over the Foreign Debtor's assets, wherever located, including without limitation, within the United States, except as expressly authorized by the Foreign Representative in writing; and (ii) entrusting the administration or realization of all or part of the Debtor's assets located in the United States to the Foreign Representative. The Foreign Representative further requests that the Court establish the Foreign Representative as the exclusive foreign representative of SNP Boat in the United States with the exclusive authority to manage and control SNP Boat's assets.

46.     The Foreign Representative believes that granting the relief sought herein will assure an economical, expeditious and equitable administration of the Foreign Debtor's restructuring.

47.     The Foreign Representative further believes that unless this Court enjoins the commencement or continuation of proceedings against the Foreign Debtor and gives effect to the exclusive authority of the Foreign Representative of SNP Boat to manage and control the Foreign Debtor's assets located within the United States, the Foreign Debtor will be immediately and irreparably harmed. As described more fully in herein, absent the relief requested herein, there exists a material threat of imminent irreparable diminution in value of the Foreign Debtor's estate resulting from unilateral actions by creditors such as St. James, impairing the ability to obtain the fairest and best recoveries possible for all stakeholders and creditors of SNP Boat in the *Sauvegarde* Proceeding.

48.     Bankruptcy Rule 1011 (b) provides that a party be provided 20 day' notice of the filing of a chapter 15 petition. Fed. R. Bankr. P. 1011(b). Bankruptcy Rule 2002(q)(1) provides that a party is to be given 20 days' notice of a hearing to consider granting the relief requested in a chapter 15 petition. Fed. R. Bankr. P. 2002(q)(1). Bankruptcy Rule 9007 permits the Court to prescribe the time, form and manner in which notice shall be given. Fed. R. Bankr. P. 9007.

49.     The Foreign Representative requests that the Recognition Hearing be scheduled for **April 27, 2010** or as soon thereafter as the Court may be available. This will provide more than the required 20 days' notice.

50.     The Foreign Representative requests that Notice of the Recognition Hearing be provided to known affected creditors or their counsel and other interested

parties by sending them a copy of the Order to Show Cause entered by this Court, as well as a form of notice that will apprise interested parties of the provisional stay, the status of the case and the schedule of further proceedings.

51.    The Foreign Representative proposes to notify such parties by e-mail and/or express mail and/or facsimile.

<b><u>Memorandum of Law in Support of Relief Requested</u></b>

**I.    Recognition of Foreign Representative and Foreign Main Proceedings are Appropriate**

Recognition of Pierre-Louis Ezavin as SNP Boat "foreign representative," and recognition of the *Sauvegarde* Proceeding as a "foreign main proceeding," are both mandated under Chapter 15 of the Bankruptcy Code.

**A.    Pierre-Louis Ezavin May Be Recognized as SNP Boat Service SA's Foreign Representative**

The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> The term 'foreign representative' means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

The Commercial Court specifically appointed Pierre-Louis Ezavin as an administrator with the mission of assisting the Foreign Debtor in its management as set forth in the April 7, 2009 *Judgment* instituting the *Sauvegarde* proceeding and specifically authorized him to file this petition under Chapter 15 of the Bankruptcy Code as is set forth in the *Certificate* attached hereto as <u>Exhibit "2"</u>.

**B.     The *Sauvegarde* is a Foreign Proceeding**

A "foreign proceeding'" is defined as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

A recent decision provides a framework for considering the question of whether cases in foreign courts qualify as "foreign proceedings" under the statutory scheme set forth by Chapter 15.  In the case of *In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009), the court was considering whether an Australian voluntary winding up proceeding could be recognized as a foreign proceeding. There, the company's business became unprofitable, liquidators were appointed, and a voluntary winding up was approved.  The liquidators issued notices inviting the filing of claims.  One creditor, unsatisfied with the process, continued prosecution of a lawsuit in the United States.  The liquidators then sought Chapter 15 recognition of the Australian winding up proceeding and a stay of the litigation.

In response to the creditor's contention that the Australian process was not a 'foreign proceeding,' the Court found that Chapter 15 "incorporate [s] the Model Law on Cross-Border Insolvency," and to interpret the term 'foreign proceeding,' "the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." *Id.* at 275-76 (quoting 11 U.S.C. § 1508).  "To fall within the scope of the Model Law, a foreign insolvency proceeding needs to possess certain attributes. These include the

following: basis in insolvency-related law of the originating State; involvement of creditors collectively; control or supervision of the assets and affairs of the debtor by a court or another official body; and reorganization or liquidation of the debtor as the purpose of the proceeding . . . ." *Id.* at 276 (quoting UNCITRAL Model Law on Cross-Border Insolvency With Guide To Enactment, par. 32, at 10).

The *Betcorp* court then conducted a lengthy examination of the Australian winding up to see whether it was: "(i) a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation." *Id.* at 277.   The court concluded that all relevant criteria were met and recognized the Australian proceeding.

A similar analysis was employed regarding a Spanish process called a *suspension de pagos,* or suspension of payments. *In re Oversight & Control Commission of Avanzit. S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (noting that the definition of "foreign proceeding . . . incorporates several requirements, including 'control and supervision' and 'for the purpose of reorganization or liquidation'"). Again, the requirements for recognition were found to have been met where:

> The main purpose of a *suspension de pagos is* to allow the debtor to reach a *convenio,* or repayment plan, with its creditors.   The *convenio* must be approved by a majority of creditors and ratified by the court.   The approval is also publicized, *inter alia,* through appropriate entries made in the Commercial, Real Estate and Civil Registries.   Once the *convenio is* approved by the court, the limitations imposed by the commencement order are lifted, and replaced by the limitations provided in the *convenio.*

> The creditors whose claims are dealt with under the *convenio* are barred
> from pursuing their claims except in accordance with the *convenio*.

385 B.R. at 528.

The Foreign Debtor's *Sauvegarde* proceeding also meets all of the criteria set forth in section 101(23) and these cases, and is entitled to recognition as a 'foreign proceeding' under chapter 15 of the Bankruptcy Code.

First, the *Sauvegarde* is a 'proceeding,' commenced by the *Judgment* instituting the proceedings, a copy of which is attached hereto as Exhibit "1".

Second, the *Sauvegarde* is a 'judicial' proceeding as it is opened by a court and the debtor is thereafter subject to the day to day supervision of the *juge-commissaire*. *Id.*

Third, the *Sauvegarde* is collective in nature, as all affected creditors are involved. *Id.* The *Betcorp* court found that a proceeding was collective where it "considers the rights and obligations of all creditors" in contrast to a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." 400 B.R. at 281.

Fourth, the *Sauvegarde* is pending in France, a foreign country.

Fifth, a *Sauvegarde* is authorized by a section of the Code de Commerce (French Commercial Code), a law that governs corporate restructuring of debts and is recognized as an insolvency proceeding under the Council Regulation (EC) Regulation No. 1346/2000 dated May 29, 2000 (as modified) on Insolvency Proceedings.

Sixth, the debtor's assets are subject to the supervision of the *juge-commissaire* during the pendency of the *Sauvegarde*.

And seventh, the objective of the *sauvegarde* is reorganization. *See In re Avanzit*, 385 B.R. at 533-34 (recognizing a "financial restructuring" as a "reorganization" for

purposes of the sections 101(23) and 1517 analysis, especially where debts will be repaid through the plan at issue).

As all of the criteria required by section 101(23) are satisfied, this Court should recognize the *Sauvegarde* as a "foreign proceeding" as required by section 1517 of the Bankruptcy Code.

## C.   The *Sauvegarde* is also a Foreign "Main" Proceeding.

A "foreign main proceeding" is defined as a "foreign proceeding" pending in the country where the debtor has the center of its main interests ("COMI"). 11 U.S.C. § 1502(4). Section 1516(c) provides a presumption that, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund,* 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd* 389 B.R. 325 (S.D.N.Y. 2008); *In re Tradex Swiss AG,* 384 B.R. 34, 43 (Bankr. D. Mass. 2008).

The Bankruptcy Code does not define COMI but courts have equated it to the United States concept of principal place of business. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund,* 389 B.R. 325, 336 (S.D.N.Y. 2008) (noting that "[a]n early bankruptcy court decision that addressed the determination of COMI specifically discusses the [regulation adopting the EU Convention on Insolvency Proceedings] language and properly equates it to the United States' concept of 'principal place of business'" (citing *In re Tri-Continental Exch. Ltd.,* 349 B.R. 627, 629 (Bankr. E.D. Cal. 2006)).

16

In *Bear Stearns*, the court identified as relevant factors: "the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; [and] the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case." 389 B.R. at 336 (citing *In re Sphinx, Ltd.*, 351 B.R. 103,117 (Bankr. S.D.N.Y. 2006), *aff'd* 371 B.R. 10 (S.D.N.Y. 2007); *see also In re Bear Stearns*, 374 B.R. at 129; *In re Tradex*, 384 B.R. at 43 ("Such factors as the location of a debtor's headquarters; the location of a debtor's management; the location of its assets and creditors; and the site of the controlling law are important in determining COW"); *In re Betcor*, 400 B.R. at 287-88 (referring to *Bear Stearns* and *Tradex* and also to cases in the European Community for COMI analysis).

Under all of the relevant criteria, SNP Boat's COMI is France. SNP Boat's registered office is located at Boulevard de la Croisette, Port Pierre Canto, Lots AX et AW, 06400, Cannes, France. As the *Sauvegarde is* pending in SNP Boat's COMI, this proceeding should be recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

**D.     The Foreign Representative is Entitled to Relief Pursuant to Section 1517 of the Bankruptcy Code**

Section 1517 of the Bankruptcy Code states that an order recognizing a foreign proceeding "shall be entered" if all of the requirements for recognition have been met. 11 U.S.C. § 1517. If all of the requirements for recognition are satisfied, recognition under section 1517(a) and (b) is mandatory. *See* H.R. Rep. 109-31, pt. 1 (2005) ("The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings ... [t]he requirements of this section ... are all that must be fulfilled to attain

recognition."). Here, the *Sauvegarde* meets all of the requirements to be designated as a foreign main proceeding, and recognition should therefore be granted.

## II.    The Issuance of Provisional Automatic Stay Protection is Appropriate

As set forth above, it is likely that SNP Boat will be successful in obtaining an order under section 1517 recognizing Pierre-Louis Ezavin as its foreign representative and the *Sauvegarde* as a foreign main proceeding. Pursuant to 11 U.S.C. § 1521(a)(1), SNP Boat will then be entitled to the protection of the automatic stay of section 362. It is therefore appropriate to issue provisional automatic stay relief pending the issuance of the Recognition Order, to ensure that SNP Boat, its United States assets, and its *Sauvegarde* are protected pending issuance of that stay.

Section 1519(a) of the Bankruptcy Code expressly permits the Court to grant "relief of a provisional nature" from the time of a petition for recognition until the time that the court rules on that petition, where such relief is "urgently needed to protect the assets of the debtor or the interest of the creditors." 11 U.S.C. § 1519(a). *See e.g., In re Sphinx*, 351 B.R. at 111 n.8 (Section 1519 of the Code provides that the bankruptcy court may grant provisional relief, under the standards, procedures and limitations applicable to an injunction, where relief is urgently needed to protect the assets of the debtor or the interests of creditors, pending determination of a foreign representative's petition for recognition of the foreign proceeding under section 1515 of the Bankruptcy Code); *In re Ho Seok Lee*, 348 B.R. 799, 802 (Bankr. W.D. Wash. 2006) (noting that § 1519 authorizes discretionary relief during the period between petition filing to petition recognition); *compare In re Alitalia Linee Aeree Italiane S.p.A.*, Chapter 15 Case No. 08-14321 (BRL) (Bankr. S.D.N.Y. Nov. 3, 2008) (pursuant to sections 105 and 1519 foreign

representative granted broad relief under section 362, pending recognition, to protect the debtor's assets in the United States, where debtor was a party to a number of litigations). Under section 1519, the automatic stay of section 362 may be applied on a provisional basis. *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850 (Bankr. C.D. Cal. 2008). In *Pro-Fit*, the debtor was in administration proceedings in England. Its foreign representative sought provisional relief pursuant to sections 105 and 1519 to stay litigation in the United States. The *Pro-Fit* court concluded that the debtor was properly seeking *in rem* stay relief, such as afforded by the automatic stay of section 362, rather than an *in personam* injunction.

> The stay under §362 is fundamentally different in several respects from an injunction. Perhaps the most important difference is that the stay is *in rem:* its purpose is to protect property that is *in custodia legis* in consequence of the bankruptcy filing. Accordingly, it is not directed to a party in litigation, or even to any particular person. Instead, it is directed to the world at large, including all individuals and corporate entities.

391 B.R. at 864.

The *Pro-Fit* court then ruled that provisional automatic stay relief was appropriately granted pending recognition, holding that "the list in § 1519 of the sections from the other parts of the bankruptcy code that can be adopted as provisional relief under § 1519 is incomplete. Thus, a number of other provisions of the bankruptcy code may be applied provisionally under § 1519 while an application for recognition is pending." *Id.* at 866. Once applied, applicable case law is also imported. *Id.* Thus, the court applied section 362 provisionally, pending recognition, and ruled that because section 362 relief rather than an injunction was being sought, no adversary proceeding was required and the rules applicable to the issuance of an injunction were inapplicable.

Here, the Foreign Representative similarly seeks the provisional application of the *in rem* stay of section 362 pending recognition, to protect SNP Boat's assets (most

notably the M/Y SIXTY FIVE) until this Court issues the Recognition Order. Under the analysis of the *Pro-Fit* court, no demonstration of the usual requirements for injunctive relief is necessary.

One bankruptcy court has required satisfaction of the standard applicable to an injunction before provisionally applying section 362 pending the hearing on recognition. *See In re Innua Canada Ltd.*, 2009 WL 1025088, at *2-3 (Bankr. D.N.J. Mar. 25, 2009). Generally, a party seeking an injunction must show (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Redford v. Gwinnett County Judicial Circuit*, No. 09-10807, 2009 U.S. App. LEXIS 21368, at *8 (11th Cir. September 25, 2009); *Horton v. City of St. Augustine, Florida*, 272 F.3d 138, 1326 (11th Cir. 2001); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). These same factors are considered by the court in determining both whether a temporary restraining order or preliminary injunction should be granted. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2000).

In this case the Foreign Representative has met the requirements of this standard as well. SNP Boat will face immediate and irreparable harm if its U.S. assets are targeted by creditors and are continued to be targeted by creditors such as St. James. *See In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury."); *see also In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("irreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of

claims and the fair distribution of assets in a single, centralized forum" (quoting Collier on Bankruptcy ¶ 304.05, at 304-21 (15th ed. rev. 2003))); *In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors").

Additionally, as it is likely that the Foreign Debtor's *Sauvegarde* will be recognized as a foreign main proceeding, at which point the section 362 automatic stay will protect its United States assets, success on the merits has been demonstrated. *See In re Innua Canada*, 2009 WL 1025088 at *3 (likelihood of success on the merits was demonstrated where it was likely that the court would recognize the foreign proceeding as a foreign main proceeding); *In re MMG LLC*, 256 B.R. at 552 (likelihood of success on the merits was demonstrated where it was likely that the court would grant comity to the debtor's foreign insolvency proceeding).

Thirdly, the balance of the hardships tips decidedly in favor of the Foreign Debtor because there is no justification for permitting any creditor to obtain preference over other creditors by commencing any action against SNP Boat or its assets. *See In re Innua Canada*, 2009 WL 1025088 at *4 (holding that the balance of hardships weighed in favor of the debtor where the provisional stay benefited the estate by allowing for orderly administration and caused no significant harm or hardship to creditors because it was temporary pending recognition); *In re Rukavina*, 227 B.R. 234, 243 (Bankr. S.D.N.Y. 1998) (preliminarily enjoining creditor's United States claim against a debtor in Luxembourg insolvency proceedings, where failure to issue an injunction would "aid [the creditor] in evading the proceedings in Luxembourg, to the prejudice of other

creditors""). Indeed, all creditors will benefit from preserving the value of SNP Boat's assets.

Finally, the public interest will not be affected by the Court's issuance of an injunction before provisionally applying section 362 pending the hearing on recognition

Accordingly, it is respectfully requested that this Court apply the automatic stay, on a provisional basis, to protect SNP Boat and its assets in the United States pending recognition.

## III.   The Proposed Notice is Appropriate

Bankruptcy Rule 1011 (b) provides that a party be provided 20 day' notice of the filing of a chapter 15 petition. Fed. R. Bankr. P. 1011(b).  Bankruptcy Rule 2002(q)(1) provides that a party is to be given 20 days' notice of a hearing to consider granting the relief requested in a chapter 15 petition. Fed. R. Bankr. P. 2002(q)(1).  Bankruptcy Rule 9007 permits the Court to prescribe the time, form and manner in which notice shall be given. Fed. R. Bankr. P. 9007.

As set forth in the application, the Foreign Representative requests that the Recognition Hearing be scheduled for **April 27, 2010** or as soon thereafter as the Court may be available. This will provide more than the required 20 days' notice. Notice of the Recognition Hearing will be provided to known affected creditors or their counsel and other interested parties by sending them a copy of the Order to Show Cause entered by this Court, as well as a form of notice that will apprise interested parties of the provisional stay, the status of the case and the schedule of further proceedings. The Foreign Representative proposes to notify parties by e-mail and/or express mail.

**WHEREFORE**, for all the reasons set forth above Pierre-Louis Ezavin, as Foreign Representative, respectfully requests that the Court enter the Proposed Order, approving provisionally relief and granting to the Foreign Representative such other and further relief as is just.

Dated this 6th day of April, 2010.

**ADORNO & YOSS LLP**

/s/ Mark S. Roher
Charles M. Tatelbaum
Florida Bar No.: 177540
Mark S. Roher
Florida Bar No. 178098
350 East Las Olas Boulevard
Suite 1700
Ft. Lauderdale, FL 33301
Telephone: (954) 763-1200
Facsimile: (954) 776-7800

Attorneys for Foreign Representative

<u>**VERIFICATION OF FOREIGN REPRESENTATIVE**</u>

1.     I am the duly authorized *Administrateur Judiciaire* and the foreign representative of SNP Boat Service SA a/k/a Service Navigation De Plaisance Boat Service SA, a foreign business organization, formed under the laws of France.

2.     I have been issued by the Commercial Court of Cannes, France (Tribunal de commerce de Cannes) the *Certificate* dated March 30, 2010 to commence the chapter 15 case.

3.     I request that the relief sought in the petition for recognition and the Petition be granted.

4.     I have read the foregoing Petition and am informed and believe that the factual allegations contained in the Petition are true and correct.

5.     I verify under penalty of perjury under the laws of the United States of America that the factual allegations contained in the Petition are true and correct.

Dated this 6th day of April, 2010.

P. L. EZAVIN
Administrateur Judiciaire
PRÈS LES TRIBUNAUX
Tél. 04 93 62 76 60
Fax 04 93 92 62 63
1 Rue Alexandre - Mari - 06300 NICE

Pierre-Louis Ezavin, *Administrateur Judiciaire*/
Foreign Representative