**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

**In re:**                                                                   **CASE NO. 10-18891-JKO**

**SNP BOAT SERVICE SA**                                         **CHAPTER 15**
**a/k/a SERVICE NAVIGATION**
**DE PLAISANCE BOAT SERVICE SA,**

      Debtor in Foreign Proceedings.
_____/

**MOTION FOR ENTRY OF ORDER ENTRUSTING M/Y SIXTY
FIVE TO FOREIGN REPRESENTATIVE FOR ADMINISTRATION
IN FRENCH BANKRUPTCY (SAUVEGARDE) PROCEEDING**

Pierre-Louis Ezavin, Foreign Representative (the "Foreign Representative") of SNP Boat Service SA a/k/a Service Navigation De Plaisance Boat Service SA ("SNPBoat" or the "Foreign Debtor"), by and through his undersigned counsel and pursuant to 11 U.S.C. §§ 1521(a)(5) and (b), files this *Motion for Entry of Order Entrusting M/Y Sixty Five to Foreign Representative for Administration in French Bankruptcy (Sauvegarde) Proceeding*:

**I.    Relevant Procedural Background**

1. On April 6, 2010, the Foreign Representative filed a *Petition for Recognition of Foreign Proceeding under Chapter 15 of the Bankruptcy Code* [DE #1] in connection with SNP Boat's Sauvegarde Proceeding pending before the Commercial Court of Cannes, France (Tribunal de commerce de Cannes).

2. On April 6, 2010, the Foreign Representative also filed his *Verified Petition for Recognition of Foreign Main Proceeding and for Provisional Relief Pursuant*

to Sections 1515 and 1519(a) of the Bankruptcy Code, Scheduling Hearing, Approving Notice and Incorporated Memorandum of Law* (the "Verified Petition") [DE # 2].

3. In the interest of brevity, the *Verified Petition for Recognition* [DE #2], including all exhibits attached thereto is fully incorporated herein.

4. On April 28, 2010, the Court entered its *Order Granting Recognition of Foreign Debtor's Sauvegarde Proceeding as a Foreign Main Proceeding Pursuant to 11 U.S.C. § 1517(b)(1)* (the "Recognition Order") [DE # 31].

5. The Court has also entered its *Agreed Order Granting in Part and Denying in Part, Emergency Motion for Entry of Order Directing Release of M/Y Sixty Five to Foreign Representative* (the "Interim Order") [DE # 32].

6. The *Interim Order* allows the Foreign Representative to obtain possession of the vessel.

7. This Motion seeks relief under Bankruptcy Code Sections 1521(a)(5) and (b) in order to permit the M/Y Sixty Five to be administered in the *Sauvegarde* Proceeding.

## II. Relevant Factual Background

### A. The Underlying Dispute

8. The underlying dispute between SNP Boat and Hotel Le St. James, Inc. ("Hotel St. James") involves a sale agreement dated May 16, 2008 wherein SNP Boat sold to Magnolia Trust and Tootsie Corp. the Vessel Number 34/10 for the price of €9,100,000 (hereinafter the "Agreement"). A copy of the Agreement is attached to the *Motion to Vacate* which is Exhibit "2" of the *Verified Petition for Recognition*. See also Paragraph 6 of the *Declaration of Jean-Paul Poulain in Support of the Motion to Vacate*

*and/or to Stay Execution (the "<u>Poulain Declaration</u>")* filed in the State Court Action[1] and attached hereto as **<u>Exhibit "A"</u>**.

9. The Agreement involved a trade in vessel, a Mangusta 80/52 called the M/Y SAINT JAMES (hereinafter the "<u>Vessel</u>"). *Poulain Declaration*, at ¶ 7.

10. By letter dated October 22, 2008, SNP Boat advised the parties to the Agreement that Addendum Nº 1 had not been fulfilled, as the Vessel was not delivered in good maintenance and operating condition, and the property was not transferred according to the Addendum where no appropriate signed delivery documents were provided to SNP Boat. A copy of said letter is attached to the *Motion to Vacate*. *Poulain Declaration*, at ¶ 8.

11. Thereafter, on or about October 27, 2008, Hotel St. James sent a letter contending that the Vessel was actually "delivered," and that they were entitled to payment. A copy of said letter is attached to the *Motion to Vacate*. *Poulain Declaration*, at ¶ 9.

12. On October 27, 2008, SNP Boat instituted legal proceedings before the Commercial Court of Cannes in order to contest Hotel St. James' claim that it had fulfilled its obligations under the Agreement (to wit, delivered a Vessel in good maintenance and operating condition with the appropriate documentation). Hotel St. James was named a party to the proceedings in France. *Poulain Declaration*, at ¶ 10.

13. Thereafter, in approximately November, 2008, Hotel St. James instituted its own lawsuit before the Court of Montreal, Canada. *Poulain Declaration*, at ¶ 11.

---

[1] Unless otherwise specifically defined herein, all capitalized terms shall have the same meaning as defined in the *Verified Petition* [DE #2].

14. SNP Boat challenged the jurisdiction of the Canadian Court based on 1) a prior suit being filed and pending in France, and 2) the courts' lack of jurisdiction over the dispute as a result of a forum selection clause found within the Agreement. *Poulain Declaration*, at ¶ 12.

15. Specifically, SNP Boat contested the Court's jurisdiction based on language in the Agreement which provides in relevant part:

> **13. DISPUTES – APPLICABLE LAW – JURISDICTION**
>
> \*\*\*
>
> Failing an amicable agreement, every technical dispute shall exclusively be referred to the final decision of Bureau VERITAS, or to the expert appointed by BUREAU VERITAS, at the request of the most diligent party.
>
> Any other dispute related to the interpretation or to the execution of this agreement shall exclusively be referred to the jurisdiction of Tribunal de Commerce de Cannes, who will judge by application of French Law.

*Poulain Declaration*, at ¶ 13.

16. Ultimately the Canadian Court entered its judgment in "default" against SNP Boat. *Poulain Declaration*, at ¶ 14.

17. In April, 2009, prior to the final judgment being entered in Canada, SNP Boat (as well as other companies including Rodriguez Group, G. Rodriguez, and Le Yacht) instituted insolvency / safeguard proceedings in the Commercial Court of Cannes (Tribunal de commerce de Cannes). *Poulain Declaration*, at ¶ 15. A copy of this order is attached as <u>Exhibit "1"</u> and <u>Exhibit "1-A"</u> to the *Verified Petition for Recognition*.

18. The French safeguard procedure's goals are to facilitate the reorganization of the debtor in order to pursue its commercial activity, to maintain its employments and

to repay its debtors (Article L. 620-1 of the French Commercial Code). *Poulain Declaration*, at ¶ 16.

19. Article L. 622-7 of the French Commercial Code provides for the prohibition of payments of prior debts as from the date of the judgment opening the safeguard proceeding. *Poulain Declaration*, at ¶ 23.

20. Article L. 622-21.I of the French Commercial Code provides for the suspension of any legal proceeding instituted by creditors (whose debts are not mentioned by Article L. 622-17.I, namely debts legally created after the judgment opening the safeguard proceeding for the needs of the procedure or the observation period, or in exchange for a service performed for the debtor during that period) in order to (i) condemn the debtor to pay an amount in cash, or to (ii) end a contract for non-payment of an amount in cash. *Poulain Declaration*, at ¶ 23.

21. Article L. 622-21.II provides for the prohibition of writs of execution on the debtor's assets as from the judgment opening the safeguard proceeding. *Poulain Declaration*, at ¶ 23.

22. The judgment opening SNP Boat's safeguard proceeding was rendered on April 7, 2009. Hotel St. James' alleged debt was created before April 7, 2009 and is therefore considered a 'prior debt'. *Poulain Declaration*, at ¶ 24.

23. Under the applicable French law, SNP Boat's prior creditors cannot execute on the assets of SNP Boat, until such time as the "plan de sauvegarde" is completed. *Poulain Declaration*, at ¶ 27.

24. In short, if Hotel St. James' alleged debt is found legitimate by the French Commercial Court (which SNP Boat clearly disputes), then Hotel St. James would

receive payments over 10 years pursuant to the "*plan de sauvegarde*". *Poulain Declaration*, at ¶ 28.

25. Under French law, Hotel St. James is not permitted to execute on SNP Boat's assets based on the Canadian Judgment. *Poulain Declaration*, at ¶ 28.

### B. Hotel St. James' Declaration of Claim Submitted in Sauvegarde Proceeding

26. On August 25, 2009, counsel for Hotel St. James declared it claim in SNP Boat's *Sauevegarde* Proceeding by submitting its Declaration of Claim, through its counsel, to Didier Cardon, *mandataire judiciaire* of SNP Boat. A copy of the Hotel St. James's Declaration of Claim in its original French form as well an English translated version is attached hereto as **Exhibit "B"**.

27. As set forth in the Declaration of Claim, Hotel St. James states that it is entitled to an unsecured claim in the *Sauvegarde* Proceeding in the amount of "2,562,000 EUR, plus interest and ancillary sums" as specifically set forth therein.

28. As set forth in the Foreign Representative's Declaration in Support of Motion to Vacate and/or Motion to Stay Execution filed in the State Court Action (the "State Court Declaration"), a copy of which is attached hereto as **Exhibit "C"**, Article L. 622-24 of the French Commercial Code provides that all creditors (except employees) must file a declaration of claim together with a proof of claim within two months after the judgment opening the safeguard proceeding has been published in the French legal gazette "*Bulletin Officiel des Annonces Civiles et Commerciales*". State Court Declaration at p. 8.

29. This period is extended to four months for creditors located outside of France. *Id*.

30. The Hotel St. James' claim, subject to its admittance, arises from the Agreement and the Addendum n°1 dated May 16, 2008. *Id*. at ¶ 9.

31. Therefore, the claim falls within the scope of the provisions of article L. 622-24. *Id*. at ¶ 9.

32. Prior claims against a debtor in *Sauvegarde* Proceeding are, subject to their final admittance as liabilities, repaid through annual payments ("dividends") in accordance with the safeguard plan ("*plan de sauvegarde*"). *Id*. at ¶ 10.

33. If the Hotel St. James' claim is admitted as a liability of SNP Boat, such claim will be repaid according to SNP Boat's *sauvegarde* plan. *Id*. at 11.

34. On April 7, 2010, the Commercial Court of Cannes approved and adopted the safeguard plan, ending the observation period.

35. As such, the Foreign Representative's role in the *Sauvegarde* Proceeding has changed from *co-Administrateur Judiciaire* to *Commissaire à l'Exécution du Plan*.

36. The Foreign Representative is now in charge of monitoring the execution and implementation of SNP Boat's safeguard plan over the next ten years. Article L. 626-25.

37. Accordingly, there is no legal basis for Hotel St. James to oppose the relief requested herein because it has already submitted its unsecured claim in the *Sauvegarde* Proceeding and any allowed claim will be paid pursuant to the *sauvegarde* plan. Hotel St. James' interests are adequately protected in the French Commercial Court, where it may assert any and all claims and the relief requested herein shall not prejudice Hotel St. James' rights to assert any and all such claims.

### III. Memorandum of Law in Support of Relief Requested

#### A. Chapter 15 Embodies Principles of Comity

Chapter 15 of the current Bankruptcy Code replaced § 304 as the Bankruptcy Code's operative provisions for dealing with cross-border insolvencies. Nevertheless, many of the principles underlying § 304 remain in effect under chapter 15. *Atlas Shipping*, 404 B.R. at 738. Significantly, chapter 15 specifically contemplates that the Court should be guided by principles of comity and cooperation with Foreign Courts in deciding whether to grant the Foreign Representative additional post-recognition relief. *Id.* This is evidenced by the pervasiveness with which comity appears in chapter 15's provisions. *Id.* For example, § 1509 specifically requires that if the Court grants recognition under § 1517, it "shall grant comity or cooperation to the foreign representative." 11 U.S.C. § 1509(b)(3). In addition, § 1507 also explicitly directs the Court to consider comity in granting additional assistance to the trustee.

While recognition of the foreign proceeding turns on the objective criteria under § 1517, "relief [post-recognition] is largely discretionary and turns on subjective factors that embody principles of comity." *Id.* citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (citing §§ 1507, 1521, and 1525). Once a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the Court will exercise its discretion consistent with principles of comity. *Id.* (citations omitted).

The *Atlas Shipping* Court found that there is a logical reason for this. "Deference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable, orderly, efficient, and systematic manner, rather than in a

haphazard, erratic, or piecemeal fashion." *Id*. citing *In re Artimm, S.r.l.*, 335 B.R. 149, 161 (Bankr. C.D. Cal. 2005). Chapter 15 "mandate[s] that the court cooperate 'to the maximum extent possible' with a foreign court or representative . . . ." *Id*. at 159. In short, while chapter 15 replaced § 304 and provided a more structured framework for recognizing foreign proceedings, Congress specifically granted Courts discretion to fashion appropriate post-recognition relief, consistent with the principles underlying § 304. *Atlas Shipping*, 404 B.R. at 738-39.

## B. Hotel St. James' Interests are Adequately Protected in the *Sauvegarde* Proceeding

The *Atlas Shipping* case, which was recently decided by the United States Bankruptcy Court for the Southern District of New York, is right on point and is virtually indistinguishable on a factual and legal basis as to the case at hand. The only differences in the Atlas Shipping case is that the case involved Danish law and that creditors attached the foreign debtor's U.S. bank accounts after the initiation of the Danish insolvency proceedings in an effort to collect on their pre-petition debts. In the Atlas Shipping case, after entering its order recognizing the Danish insolvency proceeding as a 'foreign main proceeding' pursuant to Section 1517 of the Bankruptcy Code, relief was granted to the foreign representative pursuant to Bankruptcy Code Sections 1521(a)(5) and (b) and the attached funds were allowed to be administered in the Danish insolvency proceeding.

Section 1521 permits the Court, in its discretion, to order the entrustment of a debtor's assets to the Foreign Representative. There are two forms of discretionary entrustment a Court can order under § 1521.

First, section 1521(a)(5) permits the Court to order "entrusting the administration or realization of all or part of the debtor's assets" in the United States to the Foreign Representative. 11 U.S.C. § 1521(a)(5).

In addition, under § 1521(b), the Foreign Representative may be entrusted with "the distribution of all or part of the debtor's assets located in the United States." 11 U.S.C. § 1521(b). Section 1521(b) cautions that this relief only be granted if the interests of creditors in the United States are "sufficiently protected." *Id*. One Court has described "sufficient protection" as embodying three basic principles: "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law." *In re Artimm, S.r.l.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005) (analyzing under § 304(c) of the old Code, but noting that the analysis would be "essentially the same" under § 1521(b)).

In other words, § 1521(a)(5) allows the Foreign Representative to collect property in the United States, and § 1521(b) allows the Foreign Representative to distribute the property in the foreign case, provided that creditors in the United States are sufficiently protected pursuant to § 1521(b). *In re Atlas Shipping A/S*, 404 B.R. 726, 739-740 (Bankr. S.D.N.Y. 2009). It is undisputed that Hotel St. James is a Canadian entity and is therefore not a creditor in the United States whose interests need to be protected. Hotel St. James' claims have no connection to the United States, other than its success in having the State Court enter the Writ of Execution and having the Vessel seized by the Office of the Broward County Sheriff well after the initiation of the *Sauvegarde*

Proceeding. In fact, the French Commercial Court has recently found similar actions on the part of Hotel St. James in arresting a vessel formerly owned by SNP Boat, that was subsequently sold to LOV43 Ltd. subsequent to the initiation of the *Sauvegarde* Proceeding, violated the French law's equivalent of the automatic stay.[2]

---

[2]     On April 1, 2010, the Commercial Court of Cannes entered a *Temporary Injunction and Order Imposing Sanction Against Hotel St. James (the "Sanctions Order")*, a certified translated copy of which is attached hereto as **Exhibit "D"**.  A certified copy of the original version is attached hereto as **Exhibit "E"**.

The *Sanctions Order* was entered as a result of Hotel St. James' arrest of the M/Y FOURSOME, a vessel that was formerly owned by SNP Boat, that was subsequently sold to LOV L43 Limited prior to its arrest. *Sanctions Order*, at p. 3. Hotel St. James, through its French counsel, appeared before the Commercial Court of Cannes on April 1, 2010 to oppose the entry of the *Sanctions Order*. The Commercial Court of Cannes found:

> It is important to note that it is in breach of the public order provisions of Book VI of the Commercial Code that the payment by SNP BOAT SERVICE of a debt, which predates the judgment instituting safeguard proceedings, was requested and obtained by HOTEL LE SAINT-JAMES.
>
> Indeed, paragraph I of **article L.622-21 of the Commercial Code forbids the creditors whose claims predate the judgment instituting safeguard proceedings from taking any action against the debtor to obtain payment of an amount**.
>
> The seizure was also requested in breach of paragraph II of the same article, this provision also prohibits any execution proceeding on the part of these creditors defined in I., for moth moveable property and real estate.
>
> None of the provisions of Book VI of the Commercial Code excludes foreign creditors from their application, who cannot selectively apply favorable provisions of the French legislation and regulations and ignore the restrictive provisions.
>
> Accordingly, HOTEL ST. JAMES INC cannot claim to be authorized to ignore these provisions, when declaring its claim to the Court agent (*mandataire judiciaire*) of the safeguard proceedings of the SA SNP BOAT SERVICE.
>
> In consideration of the previous seriousness of the dispute, for these reasons **HOTEL LE SAINT JAMES, INC must be ordered to release the vessel** to the plaintiff and the voluntary intervening party.

*Sanctions Order*, at pp 6-7 (Emphasis added).

As such, the Commercial Court of Cannes ordered Hotel St. James to pay One Thousand Euros for each day after the entry of the Sanctions Order that passed without Hotel St. James' release of the M/Y FOURSOME. *Sanctions Order*, at pp 7-8. The similar actions of Hotel St. James in arresting the M/Y SIXTY FIVE are illegal under French law.

Nevertheless, Hotel St. James' interests are adequately protected because its rights in the *Sauvegarde* Proceeding shall be preserved and the relief requested herein shall be without prejudice to any arguments it would like to make before the French Commercial Court. *Atlas Shipping A/S*, 404 B.R. at 742 citing *In re Milovanovic*, 357 B.R. 250, 257 (Bankr. S.D.N.Y. 2006) (ordering funds transmitted abroad over objection of an attaching creditor where creditors' rights in the foreign main proceedings were reserved). The Court should conclude, as the Atlas Shipping Court concluded, that granting the relief requested herein will be more economical and efficient in that it will permit all of SNP Boat's creditors worldwide to pursue their rights and remedies in one court of competent jurisdiction. *Id*.

**WHEREFORE**, Pierre-Louis Ezavin, as Foreign Representative of SNP Boat Service, SA, respectfully requests that the Court enter an order determining that the M/Y Sixty Five is subject to the jurisdiction and administration of the French Commercial Court in SNP Boat's *Sauvegarde* Proceeding without prejudice to the rights of Hotel St. James in SNP Boat's *Sauvegarde* Proceeding and granting such other and further relief as is just.

Dated this 5th day of May, 2010.

**ADORNO & YOSS LLP**

/s/  Mark S. Roher
Mark S. Roher
Florida Bar No. 178098
350 East Las Olas Boulevard
Suite 1700
Ft. Lauderdale, FL 33301
Telephone:  (954) 763-1200
Facsimile:   (954) 776-7800

Attorneys for Foreign Representative

13

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on May 5, 2010, a true and correct copy of the foregoing was served upon the **Office of the United States Trustee** electronically through the Court's CM/ECF system and via scanned email upon **Hotel St. James, Inc.**, c/o **Michael R. Karcher, Esq.** [mrk@ukank.com], Karcher, Canning & Karcher, 888 SE Third Ave., Suite 301, Fort Lauderdale, FL 33316 and **Scott Underwood, Esq.** [sunderwood@mws-law.com], Messana Stern, P.A., 401 East Las Olas Boulevard, Suite 1400, Fort Lauderdale, FL 33301.

    **I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

                                                         /s/ Mark S. Roher
                                                         Mark S. Roher