Page 1

1                    UNITED STATES BANKRUPTCY COURT

                      SOUTHERN DISTRICT OF FLORIDA

2                         Judge John K. Olson

3                             Case No.:   10-18891-BKC-JKO

4    In Re:

5    SNP BOAT SERVICE SA,

6         Debtor.

    _____/

7

8

9

10

11

                         STATUS CONFERENCE

13

                         December 2, 2010

14

15   The above-entitled cause came on for hearing

16   before the HONORABLE JOHN K. OLSON, one of the Judges

17   of the UNITED STATES BANKRUPTCY COURT, in and for the

18   SOUTHERN DISTRICT OF FLORIDA, at 299 East Broward

19   Boulevard, Fort Lauderdale, Broward County, Florida,

20   on Thursday, December 2, 2010, commencing at or about

21   3:30 p.m., and the following proceedings were had:

22

23                         REPORTED BY:   Helayne Wills

24

25

Page 2

1    APPEARANCES:

2         YOSS, LLP, by
          MARK S. ROHER, ESQ.,

3         on behalf of the foreign representative

4
          MESSANA STERN, by

5         SCOTT A. UNDERWOOD, ESQ.,
          and

6         COOLEY GODWARD KRONISH, by
          ROBERT EISENBACH, ESQ., (via telephone)

7         on behalf of Hotel St. James

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Good afternoon, gentlemen.

2          MR. ROHER:  Good afternoon, Your Honor.

3          THE COURT:  Let me take appearances.

4          MR. ROHER:  Mark Roher from Yoss, LLP, for

5   the foreign representative, Pierre Ezavin, of SNP

6   Boat Service.

7          MR. UNDERWOOD:  Good afternoon, Your

8   Honor.  Scott Underwood of Messana Stern, here on

9   behalf of Hotel St. James.  I believe also on the

10  phone is Mr. Robert Eisenbach of the Cooley firm

11  here on behalf of Hotel St. James.

12          Before we start, I believe Mr. Roher is

13  going to begin with his 7012 motion.  I would note

14  that before we even address that, I believe this

15  Court has twice addressed this issue regarding

16  briefing discovery, essentially summary judgment.

17  It did so on August 9th, did so again on November

18  9th.  There's really no grounds asserted for

19  reconsideration here.  It's the same argument that

20  was made on August 9th, on November 9th, and made

21  again.

22          I'm happy to address the merits, if the

23  Court wishes, but I believe first the Court should

24  consider whether this is really a motion for

25  reconsideration.

1          Thank you.

2          THE COURT:  Haven't we trod over this

3     ground before, Mr. Roher?

4          MR. ROHER:  I don't think exactly, Your

5     Honor.  I haven't requested relief to allow Rule

6     7012 to apply, and to file a motion for a judgment

7     on the pleadings.

8          I think it's appropriate, Your Honor.  The

9     pleadings are closed, essentially.  There's been a

10    lengthy briefing.  There's been essentially two

11    answers filed by Hotel St. James, a response to the

12    1521 motion, and the supplemental to the 1521

13    motion.

14         We strongly feel this matter can be

15    decided on the pleadings, Your Honor, and with

16    judicially noticed pleadings from the other actions

17    in France and in Canada.  Judicial economy, I think,

18    would be promoted by at least allowing us to file

19    the motion, Your Honor.  In the event you do not

20    feel that a judgment on the pleadings is

21    appropriate, ultimately issues for trial could

22    hopefully be significantly narrowed.

23         So we're prepared to file a motion within

24    14 days, allow 14 days for a response, 14 days for

25    reply, and have the matter set maybe some time in

1  late January.  In the meantime, we can work on

2  scheduling dates for deposition sometime after the

3  hearing.

4          THE COURT:  What would be the motion that

5  you propose to file in two weeks?

6          MR. ROHER:  It would be a motion for

7  judgment on the pleadings with regard to the 1521

8  motion.

9          THE COURT:  What do I have under

10  advisement?

11          You'll appreciate that my focus has not

12  necessarily been on this case in the last couple of

13  weeks.

14          MR. ROHER:  I'm sorry?

15          THE COURT:  I haven't been thinking a lot

16  about your case.

17          MR. ROHER:  The question is what --

18          THE COURT:  What, if anything, do we have

19  under advisement?

20          MR. ROHER:  I don't believe there's

21  anything under advisement.  We were supposed to come

22  back today to discuss scheduling depositions.

23  Mr. Underwood can correct me, but I don't believe

24  there's anything under advisement.

25          The one pending main deal motion in this

1   whole case is our 1521 motion.  This is the big

2   issue, whether we can have the M Sixty-Five vessel

3   entrusted to the foreign representative to be

4   administered in France in the Sauvegarde proceeding

5   without any prejudice to Mr. Underwood's client's

6   rights to go into France and argue whatever they

7   want; that their lien attaches, their alleged lien

8   attaches, their rights, anything.  They can

9   adjudicate, argue their claim in France.

10              That's the main deal, Your Honor.  That's

11  what we think can be addressed by way of judgment on

12  the pleadings, without any discovery, just simply

13  what's been pled, what's available on the record in

14  France, and to the extent in Canada.  We think it's

15  the most judicially economical way to handle this

16  matter.  I don't see any reason why not to do it,

17  Your Honor.

18              So if you want to -- I don't know if you

19  want to hear the status with the depositions.  I can

20  go into that.

21              THE COURT:  Before we get into

22  depositions, you're suggesting to me that there

23  doesn't need to be any more discovery?

24              MR. ROHER:  Yes.

25              THE COURT:  Mr. Underwood, are you or

1   Mr. Eisenbach going to argue?

2          MR. UNDERWOOD:  I am, Your Honor.

3          THE COURT:  Okay.

4          MR. UNDERWOOD:  Your Honor, I will

5   apologize for the colloquial reference I'm about to

6   make.  In some ways hearings before you are

7   beginning to feel like Ground Hog Day, the movie.

8          THE COURT:  I've had that same sense in

9   two matters today.

10          MR. UNDERWOOD:  Let me state that as to

11   the dispute with SNP, there have been two

12   essentially contested matters before you, both of

13   which have arisen from the same relief requested,

14   essentially, "Please turn over the vessel and allow

15   the vessel to return to France."

16          The second contested issue was whether

17   this matter should be sent to a judicial settlement

18   conference.

19          In each of those instances Your Honor has

20   provided at least some initial rulings, only for

21   those rulings to either be ignored, and essentially

22   asked for reconsideration without bluntly asking for

23   reconsideration, or eventually even asking for

24   reconsideration in one instance as to the settlement

25   conference.

Page 8

```
1              If I remind Your Honor, I will indicate
2    that this was first before Your Honor on an
3    emergency motion to transfer the vessel and to allow
4    the proceeds of a sale to move to France.  I came
5    before Your Honor and indicated there was no
6    emergency, and we would consent to a sale, but that
7    ultimately the record would need to be developed.
8    Your Honor agreed and continued the matter to a
9    final hearing to determine whether the Sauvegarde
10   should be recognized as a foreign proceeding, and to
11   consider the emergency motion.
12             We walked into that hearing, and Hotel St.
13   James had consented to recognition, essentially
14   removing the pre-recognition TRO type relief.
15   However, rather than advancing on that basis, SNP
16   asked again for Your Honor to determine this on an
17   emergency expedited basis.  They've asked for this
18   since the beginning.  Your Honor denied that relief.
19             Subsequently, Hotel St. James -- but
20   granted recognition -- moved for a settlement
21   conference.  Your Honor ordered a settlement
22   conference.  On July 20th, we went to settlement
23   conference.  The foreign representative did not
24   appear.  SNP appeared through a representative who
25   would resign days later, due to some issues that
```

1    were occurring in France.  I believe related to

2    issues, not that he had criminal matters, but when

3    there were criminal issues arising in France, I

4    believe many of those senior officials at SNP left,

5    Mr. Shacrun (phonetic) being one of them, not that

6    he was in any way implicated.

7             Subsequently, when we moved to have a

8    subsequent settlement conference, actually have the

9    foreign representative present on August 9th, that

10   relief was opposed.  Your Honor again ordered that

11   Mr. Ezavin appear.  There was a settlement

12   conference set for September 8th.  Your Honor

13   ordered that September 9th we have a scheduling

14   conference on August 9th also.  As opposed to a

15   scheduling conference, Mr. Roher argued that instead

16   Your Honor should issue a summary judgment

17   proceeding.  Your Honor indicated he was going to

18   have to have a trial, and that would be determined

19   with the scheduling conference September 9th.

20            There was a motion to reconsider the

21   settlement conference.  The second time to ask for

22   Mr. Ezavin to not appear, and now the third time at

23   which Your Honor would have ruled on that.  Your

24   Honor ruled he would have to appear, as well as a

25   senior representative of SNP, and continued the

1    status conference and the scheduling conference.

2            The settlement conference ultimately went

3    forward, not before there was another motion which

4    was ultimately withdrawn to not have a senior SNP

5    representative appear.  After that we came to the

6    scheduling conference on September 9th.  Hotel St.

7    James came to court with all its representatives to

8    discuss scheduling.

9            SNP and Ezavin, that were in town the day

10   before, and may not have been flying out immediately

11   that morning, none of them appeared for the

12   scheduling conference.  At that hearing on

13   November 9th, Mr. Roher again argued this could be

14   determined on the pleadings.  I pointed out to Your

15   Honor that we believed there was evidence to be

16   taken.  We discussed this issue already.

17           Your Honor decided that, in fact -- I

18   believe Your Honor decided discovery was necessary,

19   and this was in the nature of a summary judgment

20   hearing, and I believe if you read Mr. Roher's 7012

21   motion, not only does he want the Court to consider

22   the pleadings, which he relates to allegations and

23   answers, which they are not, such as through the

24   form of a complaint and answer, but he refers to the

25   numerous exhibits by both the parties that the Court

1    should take judicial notice of, as well as

2    consideration of substantial matters of foreign law,

3    which this Court may determine require competing

4    evidence and competing experts as to interpretation

5    of French and Canadian law, but Your Honor decided

6    summary judgment was necessary, and that you would

7    not enter summary judgment before discovery.  We

8    discussed at that last hearing blocking statutes and

9    then scheduling.

10            I'm happy to address the merits of the

11   7012 motion, but first I would relinquish the podium

12   to Your Honor, to the extent I even need to do so.

13            THE COURT:  I don't usually need

14   permission.

15            MR. UNDERWOOD:  Whether Your Honor wants

16   me to address the merits of the 7012 motion.  I

17   believe you already have.  I'm happy to go through

18   why it's inappropriate again if it's necessary.

19            THE COURT:  I don't think it is.

20            I recognized the Sauvegarde proceeding as

21   the foreign main proceeding regarding SNP Boat

22   Services.  The question that I have, and that I've

23   had from the very beginning, is whether Hotel St.

24   James was denied due process in France, or would be

25   denied due process in France, if I were to do that

1  which the foreign representative wishes me to do.

2  There are conflicting postures in Canada and France.

3          It appears to me that both parties

4  participated to some degree in both forums, and the

5  question that I have to decide in some fashion is

6  whether France improperly ignored Canadian

7  proceedings, Canada improperly ignored French

8  proceedings, and whether, if I were to grant the

9  motion by the foreign representative to transfer the

10  case and the boat specifically to France, whether

11  Hotel St. James would obtain due process.  That is a

12  territory in which you will appreciate that a lowly

13  Bankruptcy Judge sitting in Fort Lauderdale

14  hesitates to climb into, but I don't think I've got

15  much choice.

16          Now, Mr. Underwood, what did I just say to

17  which you and your client take or would express

18  disagreement?  Did I get anything wrong in what I

19  just said, that that's the issue before me?

20          MR. UNDERWOOD:  I believe that's the main

21  issue before you, Your Honor, and within that issue

22  there are several subissues that lawyers at a table

23  may disagree where they fall in line.  I believe you

24  gave an accurate summary, and I don't have a

25  disagreement as to what the issue before Your Honor

1    is.  The subissues are going to be what ultimately,

2    and the facts surrounding those issues are going to

3    be what frames Your Honor's decision.

4           We believe a trial may be necessary on

5    these, but certainly after discovery we couldn't

6    stop Mr. Roher from filing an appropriate motion for

7    summary judgment, but we believe we're entitled to

8    prepare an appropriate response to such a motion.

9           If Your Honor ultimately believes a trial

10   is necessary at that stage, that is the manner in

11   which litigation proceeds, and I believe that is the

12   manner that this litigation should proceed, and the

13   manner Your Honor has twice, and perhaps hopefully

14   three times going to order that this proceed.

15          I would note that we have previously tried

16   to take discovery in this case to accelerate the

17   process.  While SNP is here and the foreign

18   representative is here today asking for an

19   accelerated process, we asked for discovery in

20   advance of the judicial settlement conference that

21   was limited at the request of SNP, to actually

22   oppose all of it.  Your Honor ordered some limited

23   form of discovery.

24          We asked to take the depositions of the

25   foreign representative and other individuals that

1    would be here in town for the settlement conference

2    on the days following.  That was denied.

3              So this isn't a situation where we said,

4    "We're going to stop discovery."  Discovery was

5    stopped on the other side, as well as the settlement

6    conference was opposed on the other side.

7              The reason we're here now is the delays

8    that got us here were not caused by Hotel St. James,

9    except for opposing the initial emergency motion on

10   a day's notice, essentially.  We did ask to continue

11   that.  Since that we asked for settlement

12   conference.  We tried to move discovery.

13             To the extent Your Honor advances to the

14   scheduling conference, I did have a discussion with

15   Mr. Roher regarding the other issue that Your Honor

16   addressed at the November 9th hearing, and that's

17   the French blocking statute, and how that's

18   ultimately going to apply here versus the Hague

19   Convention as it relates to witnesses we need.  We

20   believe we have some proposed solutions, but I don't

21   believe we can set a final scheduling order or any

22   final scheduling today, in light of the conversation

23   Mr. Roher and I had before the hearing.  We may need

24   to continue this again for a short period.

25             Before we do so, if Your Honor is ready to

1   move to that stage, I can provide some status as to

2   what we found relating to the French blocking

3   statute, and how it's applicable, as I believe Your

4   Honor directed us to do.

5            THE COURT:  Before you go there,

6   Mr. Roher, what did I say that was incorrect when I

7   gave my sort of analysis of the state of the play?

8            MR. ROHER:  Your Honor, if the issue is

9   whether Hotel St. James' interests will be

10  sufficiently protected in the event you grant the

11  relief we seek, I believe there's case law that's

12  pretty clear.  The Atlas Shipping case I've

13  mentioned and cited many times says that if Hotel

14  St. James were to retain their rights and not have

15  their rights affected by any way by the relief that

16  we seek, that is sufficient protection.

17           THE COURT:  But that assumes -- and on the

18  basis of arguments made to me by the other side, I'm

19  not sure I can make the assumption -- that Hotel St.

20  James has received due process in the proceedings in

21  France.

22           MR. ROHER:  They have appellate rights,

23  and they've exercised appellate rights.  More

24  importantly, Your Honor, I have to emphasize, they

25  submitted themselves to the jurisdiction by filing a

1    proof of claim.  They filed a proof of claim in the

2    Sauvegarde proceedings.  I don't see how you can

3    have it both ways.

4         THE COURT:  Didn't SNP Boat Services

5    appear in the Canadian proceedings?

6         MR. ROHER:  They appeared prior to the

7    Sauvegarde proceeding, I believe to contest subject

8    matter jurisdiction, but the first order entered was

9    the judgment opening the Sauvegarde proceeding.

10   Then next on the timeline was Hotel St. James filing

11   their proof of claim.  Next on the timeline was the

12   default judgment that was entered in Canada, entered

13   incorrectly in violation of French law, in violation

14   of the stay.  They didn't seek the equivalent of

15   stay relief.

16        Those are like the three main happenings

17   in 2009.  April 2009, judgment of the French

18   Bankruptcy Court, July 2009, Hotel St. James filed

19   their proof of claim, automatic stay violation.

20   They get the default judgment in Canada.  They've

21   since appealed another ruling.  So there's clearly

22   appellate rights.  In the event their due process --

23   they allege their due process in France wasn't being

24   adhered to, they have appellate rights.

25        This is recognized modern western society.

 1   I'm not going to name another country, but if it was

 2   another --

 3           THE COURT:  Just as well.

 4           MR. ROHER:  France is not a third world

 5   country that hasn't been governed by laws and rules

 6   for centuries.

 7           THE COURT:  Be careful.  I do know

 8   something about French history.

 9           MR. ROHER:  Well, a few centuries.

10           I don't think that that is the issue.  I

11   think the issue is very clear.  Hotel St. James has

12   tried to muddy the waters as much as they can to

13   divert the attention from, I think, a

14   straightforward and clear issue.

15           They dance around the main issues and they

16   emphasize the red herrings, and would like us to go

17   down this bunny trail that's going to be very

18   expensive and very time consuming.

19           THE COURT:  Mr. Roher, tell me why it is

20   that the people from France, who were present at the

21   mediation or settlement before Judge Kimball, didn't

22   stick around to have their depositions taken.

23           MR. ROHER:  Your Honor, we had several

24   client representatives come over with a very good

25   faith intent of settling.

1        THE COURT:  I asked a very narrow

2   question, Mr. Roher.

3        MR. ROHER:  Why?

4        THE COURT:  Yes.

5        MR. ROHER:  They didn't come over to have

6   their depositions taken.  They came over for the

7   settlement conference.

8        THE COURT:  When people behave like that,

9   and they may well be perfectly within their rights,

10  but it makes them look bad, Mr. Roher.  It really

11  does.

12       MR. ROHER:  Can I give you the other side

13  of the coin?  The other side of the coin is, if

14  there's another party who wants to try to settle,

15  what kind of tone does that set to say, "We're going

16  to have the settlement conference, but we don't

17  think we're going to settle, so your depositions

18  should be scheduled the next day."

19       That's the other side of the coin, Your

20  Honor.

21       THE COURT:  I appreciate the argument, but

22  the logistical problems that are now thrown up as

23  difficulties in scheduling discovery, it just makes

24  me question the good faith of folks who are within

25  25 miles of this courthouse, and won't make

```
 1    themselves available for deposition.

 2              MR. ROHER:  Your Honor --

 3              THE COURT:  I just scratch my head about

 4    that one, Mr. Roher.  I'd pull my hair out if I had

 5    any.

 6              MR. ROHER:  Me too.

 7              THE COURT:  I might pull your hair out too

 8    if you had any.

 9              MR. ROHER:  Your Honor, again, we still

10    feel that this matter can and should be addressed,

11    based on the facts, based on the pleadings.

12              THE COURT:  Haven't I already ruled that

13    there's going to be discovery?  Hasn't that been the

14    result of one or more prior hearings?

15              MR. ROHER:  If you say so, Your Honor, I'm

16    not going to argue with you.  What I'm suggesting is

17    to not necessarily forget about discovery, in terms

18    of the scheduling, because I think what we can do is

19    just -- by the way, I offered dates in January to

20    Mr. Underwood.  They're not convenient.  I provided

21    dates in January.

22              So if we're going to maybe perhaps go into

23    February for the depositions, that will still give

24    us time to file the motion for judgment on the

25    pleadings, have all the pleadings filed, have the
```

1    hearing, and if you deny the motion, we'll have the

2    depositions lined up in some way, shape or form.

3              We're talking about sending people over to

4    France.  It's extremely expensive, Your Honor.

5              THE COURT:  He who could have solved the

6    expense problem and chose not to do so is in a

7    difficult position to say it's going to cost too

8    much for everybody to go to France.

9              MR. ROHER:  It's not only just going to

10   France, it's preparing for deposition.  Our

11   clients -- we would expect to be able to sit down

12   and prepare with our clients before they're deposed.

13   That time frame was compacted very much for the

14   settlement conference.

15             These are people who don't speak English,

16   or English is not their first language.  We're

17   probably going to need to deal with them with an

18   interpreter perhaps.  That's another consideration,

19   Your Honor.  Preparing them, sitting down with them,

20   the language barriers.

21             You can't expect someone to fly over here

22   on a settlement conference and stay two weeks.

23   These people are very busy.  They're not just

24   sitting around doing nothing.  It's not like

25   Mr. Ezavin is a retired person just sitting around.

1  He's one of a very limited number of those type of

2  people, the equivalent of a bankruptcy trustee in

3  all of France.  I believe there's about 100 of them.

4  So he's very busy.  I don't know what other cases

5  he's involved in, but the SNP case was one of the

6  largest reorganizations or insolvency proceedings

7  outside of the United States in 2009, I believe.

8          Mr. Underwood paints a picture, but with

9  all due respect, I don't think he paints an accurate

10  picture.  To the extent that I didn't respond to

11  your question appropriately, I apologize, but it's

12  just not a matter of someone down the street, he can

13  come over, let's prepare for an hour and we'll have

14  the deposition.  The depositions will be expensive,

15  again, and time consuming, but if necessary, that's

16  fine.

17          I think that we should be able to file the

18  motion for judgment on the pleadings.  I don't think

19  you've ruled on that yet.  If you have --

20          THE COURT:  I haven't ruled on this

21  specific motion.

22          MR. ROHER:  With regard to -- I'm not

23  going to correct some of the misstatements by

24  Mr. Underwood, but there's been -- I think it's

25  pretty clear that in a contested matter, we couldn't

1   file a complaint to seek relief under 1521.  It's a

2   motion.  It's a contested matter under 9014.

3           Granted, Rule 7012 doesn't normally apply,

4   but there's a provision in 9014(c) that allows the

5   Court discretion to apply Rule 7012.  So I

6   respectfully disagree with Mr. Underwood that this

7   is Ground Hog Day.  It may be a little bit like

8   Ground Hog Day, but it's not deja vu all over again,

9   because we never sought relief.  We never asked Your

10  Honor to look to 9014(c) to allow us to file the

11  motion.

12          I don't see the delay or the prejudice

13  that's going to be suffered by Hotel St. James.

14  They clearly don't have a problem with sending three

15  lawyers everywhere, so money doesn't seem to be a

16  concern of theirs.  Time is not going to make a

17  difference if the Court follows the suggested

18  schedule that I'm suggesting.  So I don't see the

19  harm, other than --

20          THE COURT:  Here's my concern, Mr. Roher,

21  and that is, if I were to grant the relief you're

22  asking for, and say that I'll consider the matter on

23  the pleadings without permitting further discovery,

24  the argument that's going to be made on appeal by

25  Hotel St. James, assuming I rule your way, is, "We

1  were deprived of our due process rights in the

2  United States by virtue of the fact that we weren't

3  allowed to show and to establish a record that we

4  were deprived of our due process rights in France."

5          Now, it may be, as you are suggesting,

6  utter crap.

7          MR. ROHER:  I would never say that to Your

8  Honor, but that's what I'm suggesting.

9          THE COURT:  -- that Hotel St. James didn't

10 receive due process in France, but if I don't let

11 them make the record, I fear that this case will

12 come back to me with directions that I permit

13 discovery, so that the due process rights of the

14 parties can be properly adjudicated.

15         I'm not directing discovery proceed for

16 the purpose of causing anybody expense.  I'm

17 suggesting to you that I'm likely to do it, because

18 I only want to do this once.

19         MR. ROHER:  You Honor, they've gotten

20 written discovery.  We've given them documents.  I

21 don't know what they hope to get from a deposition.

22         Their argument is essentially that because

23 claims were settled, it was wrong.  It was wrong to

24 compromise claims.  It was essentially wrong to

25 settle claims, the equivalent of 9019 type -- in

Page 24

1    their mind, a debtor could never settle claims,

2    because --

3            THE COURT:  Was there the equivalent of

4    9019 process in which the settlement of claims was

5    something that could be objected to by another

6    creditor?

7            MR. ROHER:  There was notice provided

8    according to French law.  It was done according to

9    French law.

10           Let me clarify myself.  I'm not saying

11   exactly like 9019.  Maybe that wasn't the best way

12   to make my point.

13           My point is, their point is, because

14   claims were settled, which may have involved a

15   creditor receiving better treatment than another

16   creditor, the whole process is inherently flawed and

17   improper.

18           THE COURT:  But then you go back to the

19   question under Chapter 15, not that the process has

20   to be the same, but that this particular creditor

21   received fair treatment.

22           MR. ROHER:  I don't know where in Chapter

23   15 that's required.  What I do know is that in

24   Chapter 15 it's the interest of all creditors and

25   the debtor that you're supposed to be concerned

1   with, Your Honor.  It's not the interest of one

2   particular creditor.

3             THE COURT:  I'm looking at 1522(a).  "The

4   Court may grant relief under Section 1519 or 1521 or

5   may modify or terminate relief only if the interest

6   of the creditors and other interested entities,

7   including the debtor, is sufficiently protected."

8             It's a shot at that, I think, what's going

9   on here.

10            MR. ROHER:  I would argue that's what's

11  been done by Hotel St. James, and what they've been

12  doing all along is against the interests of all

13  other creditors and the debtor.

14            THE COURT:  I don't now recall seeing an

15  estoppel argument advanced by the foreign

16  representative arguing unclean hands.  I don't

17  remember that it's phased in those strict equitable

18  terms.

19            MR. ROHER:  I believe you're correct, Your

20  Honor, but I think the easier argument is the stay

21  violation, the violation of the French equivalent of

22  the automatic stay.  We think it's crystal clear.

23  There's case law we cited that's crystal clear what

24  they did was in violation of French law, and they

25  can't get around the fact that they filed a proof of

Page 26

1   claim.

2          If they hadn't filed a proof of claim it

3   would be an entirely different story, and then

4   maybe, at least in my opinion, what Your Honor has

5   looked at the issue, in terms of narrowed it down,

6   that might have been, in my opinion, a different

7   story, but the fact is that they filed a proof of

8   claim.  They submit themselves to the jurisdiction.

9   That's undisputed.  They've never disputed it.  They

10  can't dispute it.  They can't dispute it.  We've

11  attached the proof of claim.

12          MR. UNDERWOOD:  I would dispute that.

13          THE COURT:  Hold on, Mr. Underwood.

14          MR. ROHER:  I've never seen or heard of it

15  being disputed.

16          THE COURT:  The problem of doing what

17  you're asking me to do is that it could be seen --

18  and I'm hardly a scaredy cat judge, as you've

19  probably figured out over the years.

20          MR. ROHER:  I have.

21          THE COURT:  The problem that I conceive is

22  that I really do not want to adjudicate something

23  here in the face of an argument of lack of due

24  process elsewhere, until I give the side who's

25  arguing lack of due process in the other forum an

1  opportunity to show me.

2          Do you think that the problems that

3  Mr. Underwood is raising can be resolved by my

4  looking at the dockets, by my looking at the

5  pleadings that have been translated?

6          MR. ROHER:  I think so.  I think that it's

7  all smoke, Your Honor.

8          THE COURT:  It may be.  In which case, I

9  really don't understand what you all are fighting

10  about.

11          MR. ROHER:  I'm going to reserve comment.

12  We've tried to settle.  We've been very reasonable.

13  That ship seems to have sailed, so to speak.  It's

14  really an easy issue, I think, Judge.

15          Atlas Shipping is a recently decided case

16  that is as close to being on all points, on four

17  corners, that I've ever encountered in a case.  It's

18  extremely applicable.  The facts are very close.

19          The only difference is, we have a Canadian

20  judgment entered in violation of the automatic stay

21  versus a valid maritime attachment in the United

22  States, but the valid maritime attachment in the

23  United States didn't matter to the Court, and the

24  Court allowed the 1521 relief.

25          Here we have something that is further

1    away from that, because the Canadian judgment was

2    entered after the Sauvegarde proceeding, after Hotel

3    St. James was on notice, after Hotel St. James had

4    filed their proof of claim.  So our case is

5    stronger.  Frankly, I think that everything Hotel

6    St. James is doing is to try to make it different,

7    and try to make any minute issue into a big problem,

8    that needs discovery, that needs witnesses, that

9    needs depositions.

10             It's really a simple case, I think.

11             THE COURT:  Thank you, Mr. Roher.

12             Mr. Underwood.

13             MR. UNDERWOOD:  Your Honor, I will try to

14   address primarily just what Mr. Roher addressed, but

15   I'll start at this point on the overall timing

16   issue.

17             A foreign representative, upon

18   recognition, does not need to file a 1521 motion in

19   front of this Court.  Rather, a foreign

20   representative can request authority to appear in

21   State Court and advance State Court litigation.

22             I would note that, I don't think it's been

23   dismissed, but there was State Court litigation.  It

24   doesn't make sense to go back there now, but back in

25   April there was a mediation scheduled in State

1   Court, and I believe there was even a trial date set

2   that would have occurred sometime over the summer in

3   State Court.

4           Would that have gotten continued for

5   various discovery reasons?  I don't know.  I can

6   tell you what I do know.  I wouldn't have been the

7   lawyer in that State Court proceeding, but

8   regardless, it was there.  They chose to proceed in

9   this forum, chose to ask to stay discovery until

10  settlement conference, chose to posture us this way.

11          I would like to address some of the other

12  points.

13          Atlas is very distinguishable for one

14  major reason.  There's other reasons, but the major

15  reason, the fairness of the process in Atlas wasn't

16  at issue.  The party opposing the additional relief

17  sought by the foreign representative wasn't saying

18  that there was an unfair process, and importantly,

19  didn't have competing rulings in foreign courts.

20          The element that is continually left out

21  of SNP's timeline is, preceding the judgment that

22  was entered, there were multiple appeals of a prior

23  ruling where SNP appeared to contest the

24  jurisdiction in the Canadian Court to a final

25  ruling, to an appellant ruling, to another appellate

1   ruling, or found that Hotel St. James was not a

2   party to the relevant contract, the same contract

3   that ultimately the French courts relied on to say

4   Hotel St. James is bound by that contract and must

5   be here in France and didn't comply with that

6   contract, when there was a pre-existing ruling from

7   Canada when SNP was involved.  So you literally have

8   these competing rulings.

9           Additionally, Mr. Roher picks and chooses

10  when to apply French legal sensibilities versus U.S.

11  legal sensibilities.  For instance, it may be like

12  9019, but the actual settlement process and the

13  noticing of that has never been presented to Your

14  Honor in any form.  There's an entire section of the

15  UCC before Your Honor.  I would suggest that it's

16  not the entire scope of French law, but no section

17  specifically as to settlement has been pointed out.

18  The scope of that noticing hasn't been pointed out.

19          Comparing the two processes is central to

20  Chapter 15, as Your Honor noted under 1522(a).  I

21  would also point out that under 1507, Your Honor,

22  for addition relief, is supposed to consider those

23  sections.

24          Another couple of reasons that Atlas just

25  immediately is different, besides the key piece that

1   fairness wasn't even at issue, there was no

2   competing foreign rulings where different courts had

3   come to different determinations as to a specific

4   document, one before the other, and the second not

5   even acknowledging the first or indicating why it

6   was coming to a separate judgment or why the first

7   should not be applicable, just coming to a different

8   ruling.

9              THE COURT:  What facts do you think you

10  can elicit in discovery that go beyond what's in the

11  documents that can be --

12             MR. UNDERWOOD:  There's several, Your

13  Honor.

14             One, what was the process of determination

15  of why more than 50 percent of the claims are

16  resolved before the plan, yet the plan is a ten-year

17  plan?  In that ten years, over the first five years

18  a party receives a meager distribution, with all of

19  it back loaded.  It is a plan that, if Your Honor

20  were to read the confirmation order, it is one that

21  would never pass muster here for feasibility

22  grounds.  As a matter of fact, the Court passes on

23  the fact that it seems extremely shaky.

24             What was the nature of these settlements,

25  because Hotel St. James did not receive them.  Hotel

1  St. James has recently received a prepared form of

2  what we've been calling the docket.  It's not

3  formally a document, and that's part of the problem.

4  There isn't a docket in this case for us to analyze.

5           It appears from that, and from the

6  documents we received, we didn't even get a full

7  record.  There are items missing.  For instance,

8  there are some claims we received.  Others, we just

9  have objections to the claim, without the underlying

10  claim.  There are settlements of objections to

11  claims, where it appears we didn't get the

12  objection.  So we know some documents are missing.

13           How did they determine who to settle with,

14  who not to?  What was the grounds for objecting to

15  the claim for Hotel St. James?  Additionally, what

16  was the likelihood of success under the plan as to

17  our fair treatment if we were to win on appeal, to

18  have a successful claim?

19           I do not have the litany of items before

20  me, but ironically, Your Honor, I think the

21  pleadings are already before you.  The irony of his

22  7012 motion is because this is a contested matter,

23  and there are motions and responses.  If Your Honor

24  thought it was appropriate to rule on the pleadings,

25  I think you already have them in large part, and I

1   would tell you that they include affidavits, they

2   include numerous exhibits.

3          So what you have is a motion, not for a

4   ruling on the pleadings, which contemplate

5   allegations and specific answers to that, to which

6   Your Honor can make a legal ruling based solely on

7   what's been admitted versus denied.  Instead there

8   are substantial other documents that are

9   evidentiary.

10          We also have competing legal issues here.

11  Mr. Roher states -- and this goes to the sense of

12  picking and choosing sensibilities.  Under 9019, we

13  should pick France's sensibility, whatever that

14  happens to be, to present to Your Honor.  However,

15  under filing a proof of claim, we should accept the

16  fact that therefore under French law, with no

17  presentation to you, that filing a proof of claim

18  under French law is the same as it is under the U.S.

19  sensibilities, which even under U.S. sensibilities,

20  it's not submitting to jurisdiction for all

21  purposes, but yet we should accept that sensibility

22  and apply that to France.

23          Similarly, we should apply a French case

24  as to the automatic stay and the applicability of

25  the automatic stay internationally, to Canada under

1    Canadian law.

2              I would tell you that the French stay, I

3    believe, does not apply internationally.  The only

4    instances we've seen where it's been applied has

5    been within litigation in France.  There may be

6    foreign litigants, but similar to Your Honor, where

7    Your Honor can say, "I may not have jurisdiction in

8    Qatar --" I say that because the World Cup was just

9    awarded there.

10             THE COURT:  Who the heck wants to play

11   soccer in Qatar?

12             MR. UNDERWOOD:  I heard the average

13   temperature in July is 116 degrees.

14             I apologize for the digression.

15             My point being, you may not have

16   jurisdiction over assets in Qatar, but if you have a

17   litigant before you, Your Honor, you can say, "I

18   have jurisdiction to sanction you here before me in

19   my court."  That doesn't mean you can impact a

20   foreign proceeding in that country.

21             Similarly, the only cases we found where

22   it applies, the French automatic stay applying

23   internationally indicates that they were applying it

24   in French court.  Even in the equivalent of the

25   French Supreme Court -- and I apologize, I wasn't

1    prepared to argue this precise point, so I don't

2    have that case cite and the actual court name --

3    even in the equivalent of the French Supreme Court,

4    and it's been cited by Mr. Roher, this case, it

5    says, "The French automatic stay applies

6    internationally," and that's where his quote stops,

7    but the rest of the quote continues on, "to the

8    extent that foreign nation finds the French

9    automatic stay applies," which isn't particularly

10   surprising.  You would imagine that actually would

11   be the law.

12        We believe that there wouldn't be

13   recognition of this proceeding in Canada.  The

14   French automatic stay wouldn't have stopped the

15   default.  There's also additional aspects of,

16   Mr. Roher suggests the process in France to continue

17   litigation is to name the foreign representatives in

18   the litigation, then you may continue.

19        There was a notice issued by the Court

20   saying, "You had appeared in this case.  We found

21   jurisdiction.  If you don't come back we're going to

22   default you."

23        That default was served on Mr. Ezavin, I

24   believe it's Mr. Cordin, there was a Mr. Proulain.

25   It was served on SNP.  So we may have even complied

1    with that under French law.  That's another issue

2    that's going to have to be decided.

3            THE COURT:  Isn't all that going to be --

4    I hate to say "obvious," but apparent from the

5    documents, rather than from discovery?  Why do you

6    need --

7            MR. UNDERWOOD:  The piece that's confusing

8    here is, it's not as though we're asking for a great

9    deal of discovery.  We're asking to depose and take

10   some document discovery of those people most

11   involved in the proceedings, such as the

12   settlements, the drafting of the plan, why certain

13   creditors were treated in a certain manner, and

14   certain unsecured creditors get such poor treatment

15   throughout the plan, such that Your Honor can

16   analyze whether this is a proceeding that would seem

17   fair to Your Honor.

18           That is not extensive discovery.  We're

19   not asking for two years of discovery.  We're not

20   asking for books -- banker boxes upon banker boxes

21   of discovery.  As a matter of fact, I think if we

22   get to the scheduling, you'll find out, at least on

23   an initial basis, how narrow we believe the

24   discovery will be, to the extent we want to address

25   that.

1          I can go through some of the issues

2     Mr. Roher raised in his 7012 motion, which again, is

3     going to have to be converted to a summary judgment

4     motion, Your Honor.  It's not 7012.  The reason 9014

5     doesn't incorporate 7012 is because of the oddity of

6     a motion as opposed to allegations and answers.

7          To the extent we address scheduling, Your

8     Honor, and address the blocking statute, I would

9     note that France does have a blocking statute that

10    makes discovery in France not pursuant to the Hague

11    Convention a criminal act.  It has been enforced,

12    infrequently, though it has been enforced recently.

13    One such instance involved a 10,000 euro fine.  I

14    don't know if there was an arrest time before that.

15    But it has been enforced.

16          I do understand that Mr. Ezavin,

17    Mr. Alexander Rodriguez, have made themselves

18    available in France.  I would note Mr. Roher

19    indicated they gave dates in January.  Certain

20    individuals gave dates.

21          Mr. Ezavin, in his own country, gave a

22    date and a time, not dates.  The date range was --

23    his date was January 20th at 10:00 a.m.  The other

24    individuals were the 19th, the 20th or the 21st.

25    Interestingly, given the precise time, I don't know

1  if it was a range of 10:00 a.m. to noon or where we

2  were being slotted in.  That one date, we have one

3  counsel who may be able to make it.  That one date

4  is problematic for Mr. Trudeau, who has been before

5  Your Honor at virtually every hearing other than

6  status conferences, and possibly problematic for me.

7  I don't know that to be true.

8          My son's first birthday is January 20th.

9  I don't know how that falls on when his birthday

10  party is, but I'll tell you, my calendar is easier

11  than my wife's.

12          THE COURT:  He's unlikely to notice your

13  absence, but you are very likely to notice your

14  absence.

15          MR. UNDERWOOD:  More importantly, Your

16  Honor, my wife is very likely to notice my absence.

17  My calendar I can easily answer questions to.  My

18  calendar, as she sets it, is a little more

19  difficult.

20          Beyond that, we have some concerns

21  regarding the criminal nature of the blocking

22  statute.  We appreciate that Mr. Ezavin and certain

23  individuals from SNP have made themselves available.

24  What we would propose is, as opposed to the multiple

25  individuals we listed at the last hearing, due to

1   researching the blocking statute, we would forgo at

2   this time taking Mr. Alexander Rodriguez'

3   deposition.  We understand there's likely

4   limitations -- we're presuming there are limitations

5   upon him leaving the country.  If there are not such

6   limitations, we would ask that he leave the country,

7   but we presume that there are.

8           We would forgo that, to not ourselves walk

9   into France challenging the fairness of their

10  courts, while at the same time breaking their

11  criminal laws.

12          THE COURT:  Where does Mr. Ezavin live?

13          MR. UNDERWOOD:  It's my understanding he's

14  in Cannes, France.

15          THE COURT:  Two hour trains to Italy, or

16  Monaco.

17          MR. UNDERWOOD:  If it wasn't to be in the

18  United States, that was one of the options that

19  Hotel St. James is willing to do.  We would like a

20  few dates that we can compare.  The one date is

21  problematic.  If he has to be out of the country,

22  the 20th may not even apply.

23          We would ask to provide a short list of

24  individuals at SNP with the most knowledge as to a

25  limited range of subjects regarding the plan, the

1    process during the Sauvegarde, and the settlements

2    among the various creditors.  I would have to look

3    back at my pleadings to see if there were any other

4    relatively narrow issues.  We're not talking about a

5    substantial group of people.  We're not talking

6    about a substantial amount of discovery.

7                As far as the timing here, there are

8    multiple options for SNP and Ezavin.  They could

9    have gone down different courses to have advanced

10    this already.  We do have limited discovery.  This

11    isn't, for instance, TOUSA, and we're asking for

12    unbelievable amounts of historical documents

13    regarding financial transactions.

14                THE COURT:  If you want those, they're

15    freely available to you.  Just roll up your dump

16    truck.

17                MR. UNDERWOOD:  That's not what we have

18    here today.

19                We do believe that litigation in this

20    country entitles us to some amount of reasonable

21    discovery to make a record, as you noted, for the

22    defenses that we have.  We do believe that the

23    process would offend the sensibilities of the U.S.

24    Bankruptcy Judge, and that under that instance,

25    additional relief would not be appropriate here, and

1    we do believe the circumstances in relation to the

2    Canadian judgment, the fact that we will impress

3    upon this Court that Canada would not recognize the

4    Sauvegarde proceeding, that drastically changes the

5    dynamics, particularly from Atlas Shipping, but from

6    virtually every other Chapter 15 that's come before

7    a Court in the United States.

8                THE COURT:  Thank you.

9                Mr. Roher, I know you were eager to tell

10   me some things at various points.  I have about ten

11   more minutes before I turn into a pumpkin.

12               MR. ROHER:  I will be brief.  I was going

13   to suggest that we finish the argument on the 7012

14   motion before Mr. Underwood jumped into the

15   deposition issues.

16               What I did notice, and would like to point

17   out a few things, is that naturally, Hotel St. James

18   is trying to point out and emphasize everything

19   that's possibly different than the Atlas Shipping

20   case.  That really has no relevance, in my opinion.

21   The relevant facts --

22               THE COURT:  Mr. Roher --

23               MR. ROHER:  I'll move on.

24               THE COURT:  Let me tell you what I think

25   I'm going to do, and then you tell me why I

1   shouldn't or can't do it.

2          I am inclined to deny the Rule 7012(c)

3   motion without prejudice.  I'm inclined to permit

4   limited discovery in the nature that Mr. Underwood

5   discussed to go forward, but it has to be dates that

6   work for both sides.  I don't think that's extensive

7   discovery.

8          How many deponents do you have,

9   Mr. Underwood?

10         MR. UNDERWOOD:  In part, Your Honor, it

11  will depend on how many people SNP designates as

12  individuals with the most knowledge, but I don't

13  anticipate it being more than -- off the top of my

14  head I was able to come up with three categories.

15  If it's five categories or half a dozen, I wouldn't

16  be surprised if it reaches that number.  I would be

17  really surprised if it's more than a half dozen.

18         MR. ROHER:  It won't be that many.

19         I can understand Mr. Ezavin's deposition.

20  The person that has taken over the day-to-day

21  operations, it's my understanding, just took that

22  over in October of this year, so in terms of --

23         THE COURT:  He or she may not know

24  anything.

25         MR. ROHER:  I'm 99.9 percent sure that

1    person, Mr. De Santos, who was here, because of the

2    day-to-day operations, was here for the settlement

3    conference, he's not going to be able to testify

4    what happened in the Sauvegarde.

5              It will be Mr. Ezavin and perhaps one of

6    the attorneys, Mr. Proulain.  I have to check.

7    Other than that, we're talking about a couple.

8              THE COURT:  I'm not trying to drag this

9    out.  Lord knows, I've got enough to do.

10             MR. ROHER:  Can I just point out a couple

11   of things?

12             THE COURT:  Sure.

13             MR. ROHER:  It may or may not change your

14   position.

15             I'd like to emphasize that you're not here

16   sitting as a French Appellate Court to judge the

17   feasibility or the propriety of the plan.

18             THE COURT:  To be sure.

19             MR. ROHER:  Mr. Underwood keeps talking

20   about this unfair plan.  Plans are typically paid

21   out -- these are typical ten-year plans.  They're

22   not the same as Chapter 11 plans exactly, but they

23   are what they are.  They're structured a certain

24   way, and that's the way they are.  So I don't

25   understand what you're going to do with these facts.

Page 44

1           They could have appealed the plan.  I

2    don't believe they did.  They could have appealed

3    the confirmation order.  I don't believe they did.

4    They could have participated and gotten full, full,

5    full notice of every single thing if they wanted to,

6    but they didn't.

7           This is the first time I heard about any

8    specific missing documents, and I still don't

9    understand the relevance.  If there are ones that

10   need to be done -- my understanding is that the

11   orders approving these settlements were submitted to

12   Mr. Underwood and they were in French.  I wasn't

13   able to read them, but I'm assuming there was some

14   discussion of the actual underlying issues.

15          I don't know what Mr. Underwood's status

16   is in getting --

17          THE COURT:  Mr. Roher, I don't mean to cut

18   you off, but I'm going to.

19          MR. ROHER:  That's fine, Your Honor.  I

20   was done.

21          THE COURT:  I'm going to deny your rule

22   7012(c) motion without prejudice.  I'm going to

23   direct you to take two by fours to one another, and

24   at the end of that wonderful extravaganza, submit an

25   agreed discovery motion and order, and I'll expect

Page 45

1   cooperation.

2          Unless there's some prohibition on -- I do

3   not wish to direct that discovery occur in a manner

4   that is violative of French law, but there are, if

5   the parties wish to cooperate, very likely to be

6   ways around those issues.  There certainly are law

7   firms in Monte Carlo, Monaco.  In the middle of the

8   winter, it's not very far from Cannes.  You can get

9   there in half an hour or 45 minutes on the train.

10          Italy is just on the other side of -- if

11  you have to go to Genoa, you have to go to Genoa.

12  It's a two or three hour train ride.  It's no big

13  deal.  Don't put yourselves in a position where any

14  of you gentlemen or your clients end up as guests of

15  the French government for violating French criminal

16  or civil law in proceeding with discovery.

17          If this is done efficiently, there's no

18  reason why you can't have it done by the end of

19  February at the worst.  Then one side or the other

20  may be in a very good position to do a Rule 56

21  motion, once the testimony is pinned down in a way

22  that augments the documents in the record.

23          I'm not unsympathetic to your position,

24  Mr. Roher, that this may be a simple case, and it

25  may be a very easy one, but the links between the

1  various pieces of your argument are ones that I'm

2  squeamish about, because I don't really know if what

3  we assume as American lawyers apply to French

4  statutory law or Canadian law.  So I'm willing to

5  let Mr. Underwood's clients spend a little bit more

6  money, and if they come up with a dry hole, I will

7  be happy, indeed delighted, to ship this case off to

8  France, along with the Motor Yacht Sixty Five.

9             You haven't all agreed on the sale of M/Y

10  Sixty Five, I gather?

11             MR. ROHER:  It would be boat or proceeds.

12             THE COURT:  This is a good time of year I

13  should have thought to sell boats in Fort

14  Lauderdale.

15             MR. ROHER:  We're trying, Your Honor.

16             THE COURT:  That's still being discussed?

17             MR. UNDERWOOD:  It's not that we're going

18  to.  Hotel St. James would be buying the vessel.  I

19  believe the vessel is still being actively marketed,

20  and Hotel St. James supports any marketing or sale

21  of the vessel, so long as it's fair, not to an

22  insider and that type of thing.

23             THE COURT:  You don't have a live one?

24             MR. ROHER:  Right now, no.

25             THE COURT:  My understanding is, there's a

1   surplus of yachts on the market, maybe not vessels

2   of this magnitude.

3           MR. ROHER:  The way I understand it, the

4   global economy is not as good as it once was, and

5   people aren't buying yachts as readily as they once

6   were.

7           Just so I'm perfectly clear, in terms of

8   what you expect from us going forward, I understand

9   you denied it without prejudice, the 7012 motion.

10  You'd like us to file an agreed motion, in terms

11  of --

12          THE COURT:  Setting a discovery timetable,

13  and the parameters of the discovery.

14          MR. ROHER:  By --

15          THE COURT:  I'd like it as soon as I could

16  have it.  I should think that both of you would like

17  that, as well, so you can get this behind you.

18  South of France isn't bad even in the winter.

19          MR. ROHER:  I'm sure.

20          I understand, Your Honor.  This discovery

21  will cover the witnesses for the depositions.

22          THE COURT:  Discovery will cover the

23  witnesses?

24          MR. ROHER:  This will deal with setting

25  depositions.

Page 48

```
 1              THE COURT:  Yes.
 2              MR. ROHER:  As soon as possible.  I agree,
 3    Your Honor.
 4              THE COURT:  Should I set a date for you to
 5    come back and me to yell at you if you haven't done
 6    it?
 7              MR. ROHER:  That may not be the worst
 8    idea.
 9              THE COURT:  How far out should I do that?
10              MR. UNDERWOOD:  Three weeks.
11              THE COURT:  I'm probably not going to be
12    here on December 23rd.
13              MR. ROHER:  I would prefer maybe two
14    weeks.  If it has to be continued or whatever --
15              MR. UNDERWOOD:  I don't have an objection
16    to two weeks.
17              THE COURT:  Let's do it on the 17th, at
18    say 11 o'clock.  Omnibus hearings don't usually drag
19    on too long.
20              MR. UNDERWOOD:  If Your Honor would permit
21    me to take a brief look at my calendar.  That looks
22    open to me, Your Honor.
23              One point I want to clarify regarding
24    discovery, I would note, not dissimilar from any
25    other case, this is the discovery we anticipate
```

1    taking today.  If there was discovery we should have

2    known about today that we didn't pass on, that would

3    be one thing.  If everyone says, "No, you've got the

4    wrong person, you should be taking X," we would

5    believe it's without prejudice, if we had grounds

6    for additional discovery.

7              THE COURT:  I think that's fair.

8              Let's have a renewed version of the status

9    conference -- Mr. Underwood, give me two orders,

10   setting a status conference on discovery December 17

11   at 11 o'clock, and otherwise a separate order

12   denying without prejudice Mr. Roher's motion.

13             MR. ROHER:  You want Mr. Underwood to do

14   the orders?

15             MR. UNDERWOOD:  I'll be fair.

16             THE COURT:  He'll have the caption up in

17   his word processor.  He can do it fast.

18             Thank you both.

19             (Thereupon, the hearing was concluded.)

20

21

22

23

24

25

Page 50

1                          CERTIFICATION

2

3    STATE OF FLORIDA:

4    COUNTY  OF  DADE:

5

6              I, HELAYNE F. WILLS, Shorthand Reporter

7    and Notary Public in and for the State of Florida at

8    Large, do hereby certify that the foregoing

9    proceedings were taken before me at the date and place

10   as stated in the caption hereto on Page 1; that the

11   foregoing computer-aided transcription is a true

12   record of my stenographic notes taken at said

13   proceedings.

14              WITNESS my hand this 6th day of April,

15   2011.

16

17

18   _____

                      HELAYNE F. WILLS

19            Court Reporter and Notary Public

             In and For the State of Florida at Large

20         Commission No:  DD887579  Expires:  8/2/13

21

22

23

24

25